Tracey YOUNG, Appellant,

v.

STATE of Indiana, Appellee.

No. 585S207.

Supreme Court of Indiana.

May 30, 1986.

Rick L. Jancha, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Tracey Young was convicted after a jury trial of attempted robbery, a class B felony, Ind.Code § 35–42–5–1, § 35–41–5–1 (Burns 1985 Repl.). He was sentenced to a term of imprisonment of twelve years.

In this direct appeal he challenges the sufficiency of the evidence. Specifically, he argues that the evidence was insufficient to identify him as the perpetrator or to show the use of a deadly weapon.

The facts most favorable to the judgment below are as follows. The victim, Kimberly Jacobs, arrived at Pardner's Lounge in South Bend late on the evening of April 27, 1984. Jacobs did not have money to enter the bar, but she stood in the doorway for a few minutes. She overheard two black men arguing that they did not have—or did not want to pay—the money to enter the bar. Jacobs saw only one of the men. She later recognized the voice of the unseen man as that of the appellant.

Jacobs left and began walking to her car nearby. Young jumped out and put a gun to her head, telling Jacobs that he would "blow her away" if she screamed. Jacobs told him that she had little money. He grabbed her by the back of her hair and knocked her to her knees. Jacobs saw what appeared to be a toy gun in appellant's left hand. She saw the real gun before her assailant returned it to her head and indicated that he wanted her jewelry.

After appellant dragged Jacobs across the parking lot, Jacobs managed to break her assailant's grasp. She and Young looked at each other, and then she turned and ran. Young screamed that he would let her go "this time".

Jacobs returned to the bar and police were called. An off-duty police officer, Thomas Fautz, was driving within a few blocks of the bar when he heard the dispatch regarding the attempted robbery. Approaching the crime scene, Fautz saw the appellant looking over his shoulder toward the bar while walking away from it. Fautz stopped the appellant and asked him if he had seen anyone. The appellant said he saw a black man in a dark-colored or black jacket.

Fautz searched Young and found a gun-shaped object made of blue metal which appeared to have been part of a saw handle. Appellant told police that the black man in the dark jacket dropped it and that Young recovered it for his brother. Appellant was wearing heavy black gloves when he was stopped.

Fautz took Young back to the bar, where Jacobs identified him as her assailant. The identification occurred approximately ten minutes after the attempted robbery. Jacobs noted that he had changed jackets and was now wearing a light-weight gray jacket, rather than a heavy black jacket. She also identified the gun-shaped item taken from the appellant as the object which her attacker had held in his left hand.

Without Jacobs' knowledge, the police had dropped one of the appellant's gloves on the sidewalk to allow a tracking dog to take its scent. Jacobs saw the glove and identified it as that worn by her assailant.

Subsequent searches of the area by policemen and a tracking dog failed to uncover either a gun or a black jacket.

## I. Identification

Appellant argues that insufficient evidence supported the jury's conclusion that he was the assailant. Appellant bases this argument on discrepancies between the victim's original description of her assailant and the defendant's appearance at the time of his arrest.

■ On review, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Loyd v. State*, (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied.*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. We look only to the evidence most favorable to the State to determine whether the crime was proven beyond a reasonable doubt. *Id.*

Jacobs, who is 5'5 or 5'6, told both police and the jury that her assailant was a black man taller than she. She described him as having short hair, a round face, a medium build, and no facial hair. She said the man wore black winter gloves, blue jeans, and a black long-sleeved jacket which was zipped up to his neck.

Appellant notes that an investigating officer testified that the victim more specifically described her assailant as being about the officer's height—5'8. The defendant is 5'11. Appellant also notes that police detected the odor of alcohol on him from four feet away, whereas the victim did not notice any unusual smell from her assailant at a closer distance.

Appellant argues that the unexplained disappearance of the black jacket worn by the perpetrator further renders the identification evidence insufficient. While the State's far-reaching theory is that an accessory disposed of the jacket and gun, the prosecution is not under any obligation to prove how appellant reappeared in a different jacket. This argument is unavailing to the appellant in light of the victim's unwaivering identification of the appellant as the would-be robber.

■ Such discrepancies between the description of the assailant and the actual appearance of the appellant could have been considered by the jury in assessing the credibility of the victim's testimony. However, the unequivocal identification of a defendant by the victim in court, despite descrepancies between her description of the perpetrator and the appearance of the defendant, is sufficient to support a conviction. *Killion v. State* (1984), Ind., 464 N.E.2d 920.

■ Jacobs unequivocally identified the defendant as her assailant within ten minutes of the crime. She also identified the defendant in court without hesitation. The evidence clearly was sufficient to support the jury's conclusion that the defendant was the would-be robber. See *Hill v. State*, (1983) Ind., 450 N.E.2d 64 (contradictory evidence as to the bandit's height, hair color, and cap not significant enough to preclude a jury determination of guilt).

## II. Weapon

Appellant also argues that the evidence was insufficient to support the jury's conclusion that a deadly weapon was used to perpetrate the crime. Appellant notes that a weapon was never introduced into evidence and that searches by police and a police dog did not recover a gun. However, appellant disregards the testimony of Jacobs. She described her assailant's gun to police at the scene and to the jury at trial.

■ The uncorroborated testimony of a victim is sufficient to sustain a robbery conviction. *Williams v. State* (1981), 275 Ind. 603, 419 N.E.2d 134. In *Mears v. State* (1983), Ind., 455 N.E.2d 603, we sustained a robbery conviction where the only evidence as to the use of a gun was the victim's testimony. Jacobs' testimony alone clearly was sufficient to support the jury's conclusion that Young used a deadly weapon in the thwarted robbery.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK, and DICKSON, JJ., concur.