**Stacey THREATS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A05–9107–CR–220.**

Court of Appeals of Indiana,
Fifth District.

Dec. 9, 1991.
Transfer Denied Feb. 21, 1992.

Cohen and Thiros by Nick J. Thiros, Merrillville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

1. Ind.Code 35–42–5–1

BARTEAU, Judge.

A jury found Stacey Threats guilty of robbery as a Class B felony.[1] His appeal presents three issues, which we restate and answer as follows:

1. The evidence was sufficient.

2. The trial judge did not err by replacing a juror during the jury's deliberations.

3. The trial judge erred by not explaining to the remaining jurors why the one had been replaced.

We reverse.

## SUFFICIENCY

■ The victim's identification of Threats made the State's case. The defense consisted of (a) cross-examining the victim to expose inconsistencies in the identification, and (b) presenting the alibi testimony of Threats' wife.

In Threats' brief, the inconsistencies are called to our attention, as well as the idea that eyewitness identification evidence is "doubtful at best." *Stinson v. State* (1974), 262 Ind. 189, 191, 313 N.E.2d 699, 701. The State's brief focuses on the portions of the victim's testimony favorable to the verdict, in conformity with the well-known standard of review: "On review, we will neither reweigh the evidence nor judge the credibility of the witnesses. We look only to the evidence most favorable to the State to determine whether the crime was proven beyond a reasonable doubt." *Young v. State* (1986), Ind., 493 N.E.2d 455, 457 (citations omitted).

Here, the evidence most favorable to the State came from the victim, who selected the defendant's picture at the police station after viewing ten or eleven slide carousels, and later identified Threats in court as the robber, testifying "I couldn't stop staring at him.... I could never forget his face. It's imprinted on my mind." Any conflict among that testimony, its inconsistencies, and Threats' alibi evidence was resolved by the jury, whose province we will not invade. We hold the evidence was sufficient. It is well-settled that the uncorroborated

testimony of the victim can sustain a robbery conviction. *See, e.g., Young, supra.*

Our holding is supported by both *Young*—a case in which the appellant argued to no avail that discrepancies between the victim's description and the defendant's appearance rendered the evidence insufficient—and *Stinson,* the case quoted by Threats. In context, the "doubtful at best" quote from *Stinson* appears as follows:

> It has often been observed by this Court and courts in other jurisdictions that personal identification evidence is doubtful at best and should be subject to close scrutiny. It would be naive to say that any person could be absolutely certain of the identification of another person whom they had never known previously and had observed only in a brief period of excitement and great tension. All testimony of such a nature must certainly be subject to extensive cross-examination in order that the jury may properly evaluate its content.

*Stinson,* 262 Ind. at 191–92, 313 N.E.2d at 699.

Here, defense counsel on cross-examination elicited the various discrepancies. The jury heard the witnesses' testimony, evaluated its content, and then made its decision. Threats' argument invites us to reweigh the evidence, or rule as a matter of law that uncorroborated personal identification testimony is insufficient evidence. We refuse to do either.

### REPLACEMENT OF JUROR

During jury selection, it was discovered that a member of the venire, Moss, had known Threats years before. Nevertheless, Moss was not struck from the jury, and eventually became its foreman. Then, two hours into the jury's deliberation, Moss revealed to the other jurors that he knew Threats' wife. One of them called this to the attention of the bailiff, who informed the judge.

The trial judge summoned Moss from the jury room. Moss explained, in response to questions from the judge, the prosecutor, and defense counsel, that he had seen Mrs. Threats among the worshipers at his church. However, the two were not friends, and nothing indicated that they had discussed the case. Nevertheless, the trial judge replaced Moss with an alternate juror. Threats then moved for, and was denied, a mistrial.

Under discussion here is the decision to replace Moss, in which we see no error. Our discussion of Threats' motion for mistrial is reserved for the final section of this opinion.

■ Ind. Trial Rule 47(B) states that alternate jurors "shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties." Trial court decisions on replacing a juror with an alternate are reviewed for abuse of discretion. *Ferry v. State* (1983), Ind., 453 N.E.2d 207, 213. An abuse of discretion occurs only if the decision places the defendant in substantial peril. *Woolston v. State* (1983), Ind., 453 N.E.2d 965, 968, *reh'g denied.*

■ A biased juror must be removed, for Art. 1, § 13 of the Indiana Constitution guarantees an impartial jury. A juror's bias may be actual, or, implied, that is, presumed from the juror's relationship with one of the parties. *Block v. State* (1885), 100 Ind. 357, 362. Implied bias is attributed to a juror upon a finding of a certain relationship, regardless of actual partiality. *See, e.g., Haak v. State* (1981), 275 Ind. 415, 417 N.E.2d 321 (juror whose husband was hired, on the first day of trial, as a deputy prosecutor by the prosecutor whose office was prosecuting the case).

Actual bias can arise, in the absence of a juror's admission of partiality, by inference from some connection of the juror to the case, where the nexus is insufficient to create implied bias. A trial judge's discretionary finding of actual bias turns on a calculus incorporating the nature of the link and any indications of partiality. *See, e.g., Woolston,* 453 N.E.2d at 968 (no bias where juror knew and disrespected defense witness but did not doubt witness's truthfulness and asserted impartiality); *Creek v. State* (1988), Ind., 523 N.E.2d 425, 427 (no

bias where juror and State's witness had "casual contact" at workplace and had agreed to not discuss the case); *Stevens v. State* (1976), 265 Ind. 396, 354 N.E.2d 727, *on reh'g* 265 Ind. 396, 357 N.E.2d 245 (no bias where juror discussed case with co-worker who was defendant's sister-in-law and defense witness; juror could not remember details of discussion and ·had formed no opinion as to guilt).

Removal of a biased juror is proper regardless of which way the bias cuts. *See Haak, supra; Landers v. State* (1975), 165 Ind.App. 221, 233, 331 N.E.2d 770, 777, *trans. denied* (defendant conversed with juror during recess and introduced her daughter to juror). *See also* Ind.Code 35–37–1–5(a)(11) (venire member may be challenged for cause if "biased or prejudiced for or against the defendant.").

■ Here, the questioning of Moss revealed the relationship between himself and Mrs. Threats was one of "casual contact," *Creek*, 523 N.E.2d at 427. Moreover, Moss asserted that he was impartial. Those facts suggest that Moss could have remained on the jury. However, the fact that Moss failed to immediately reveal his recognition of Mrs. Threats entered into . the court's bias calculus. The trial judge stated he replaced Moss "for not revealing to the Court at the time the witness appeared that he knew this witness." Record at 325.

The trial judge also perceived the "appearance of an impropriety."[2] Although Moss gave an innocuous explanation for his failure to inform the court at the time Mrs. Threats took the witness stand that he recognized her, the mere fact of that recognition and silence placed Moss's impartiality in question. The resulting shadow over Moss's integrity as a juror warranted the trial judge's exercise of the discretionary replacement power.

We see no abuse of that discretion, because there is no showing that removing Moss placed Threats in substantial peril. Nothing has been argued that the alternate harbored a bias against Threats. Nor can it be said, assuming that Moss was biased in favor of Threats, that removing a pro-defense juror, thereby leaving the verdict entrusted to an impartial jury, gravely imperils the defendant. *See Landers, supra.*

However, it can be said that where one juror, the foreman, informs the others that he knows the defendant's wife, thereby prompting another juror to inform the trial judge of that fact, removal of the first juror raises a question as to the effect of that revelation on the remaining jurors. We turn now to that question.

## ADMONISHMENT

■ Threats argues that the trial judge erred by not admonishing the jury regarding Moss's removal, citing *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819. In *Lindsey*, the court recessed for the day at the close of the State's case, with the jurors retiring to their homes. The following morning, the defense moved for mistrial because a prejudicial and factually incorrect article had been published in the local newspaper the evening before. The trial judge, after stating there was no question the defendant would be entitled to a mistrial if the article had infected the jury, allowed the trial to continue to its conclusion. Upon the jury's returning a guilty verdict, the judge questioned the jurors as to any possible prejudice from the article. Finding none, the trial judge allowed the verdict to stand.

This court affirmed, but the supreme court reversed, observing that "[t]he natural and worthy tendency to salvage the trial ... must be counterbalanced with minimum standards for the protection of the defendant's constitutionally guaranteed right to a fair trial." *Lindsey*, 260 Ind. at 357–58, 295 N.E.2d at 823. Justice Prentice's majority opinion cited federal case

---

**2.** The trial judge explained his decision in these words to Moss:

Mr. Moss I'm going to let you off the hook. I'm going to rule that it's just the appearance of an impropriety, it's not an actual impropriety, just the appearance of it and I'm letting you off the hook. You don't have to be a juror in this case anymore.

Record at 321.

law holding that "whenever prejudicial publicity is brought to the attention of the court, at a minimum it must, at that time, interrogate the jury to determine its exposure, and that jurors acknowledging exposure should be examined individually to determine the extent of such exposure and the likelihood of prejudice resulting therefrom." *Id.*, 260 Ind. at 358, 295 N.E.2d at 823.

The importance of immediately questioning jurors who may have been exposed to prejudicial influences is highlighted by the treatment in *Lindsey* of a possible waiver argument. It appears that defense counsel in *Lindsey* moved for a mistrial, but not for *voir dire* of the jurors. That procedural stance appears in this case as well, although counsel nearly moved for such inquiry.[3] The *Lindsey* court wrote as follows about counsel's failure to move for questioning of the jury:

> Although counsel should have so moved, rather than to ask for a mistrial at that stage, the motion for mistrial and colloquy that followed performed the function of bringing the problems squarely to the attention of the trial judge and should have brought forth appropriate remedial action. The threat of prejudice being substantial, the prime consideration of the trial judge should have been to protect the integrity of the trial and not to salvage it. *That obligation may be satisfied only by taking the best reasonably available steps to assure a verdict free of improper influences and not by proceeding upon the assumption that all may be well and that, if not, it will be detected and rectified later.*

*Lindsey*, 260 Ind. at 359–60, 295 N.E.2d at 824 (emphasis added).

The case at bar is not controlled by *Lindsey*, argues the State, pointing out that no prejudicial newspaper article is before us. Yet, merely stating that obvious difference raises no distinction, because both the situation in *Lindsey* and that in this case give rise to a fair question regarding the jury's reaction to an adventitious, potentially influential event.

Threats argues the remaining jurors, left uninformed as to why Moss was removed, may have inferred the trial judge found Moss in collaboration with Threats, leading to a second inference that Threats must have been guilty, or Moss would not have resorted to such subterfuge. The State disparages that as speculative. We agree with the State, noting however that the existence of any proposed inference might have been confirmed if the trial judge had conducted a *Lindsey* hearing. Without that, any musing as to whether or how removing Moss affected the jury necessarily remains purely conjectural on direct review. But, to require a non-speculative showing in the appellate brief that the jury became biased against Threats because of Moss's conduct would be to impose an unreachable threshold. The circumstances here, in which possible prejudice arose from the statements of a juror during deliberations, leave no doubt as to the jury's exposure. Therefore, this case must be distinguished from those which require the claimant, at the threshold, to prove the jury was exposed to extraneous material before imposing on the trial court a duty to determine whether the exposure tainted the jury, as in *Fox v. State* (1984), Ind., 457 N.E.2d 1088 (issue arose post-verdict), or in *Wilburn v. State* (1982), Ind., 442 N.E.2d 1098, 1102 (pre-trial publicity).

**3.** The record contains this dialog:

[Defense counsel]: Are you going to call the jury in now and explain to them why you did this?

[Trial judge]: No. Do you think I should?

[Defense counsel]: Your Honor, I think, it's obvious that what happened in [the jury room] was simply a case of a couple jurors not agreeing with Mr. Moss and their reporting it to Mr.—

[Trial judge]: Having some ground, having some ground for believing that he was not—I don't know, what do you do in the jury room, are you negotiating in there, you're deliberating, you're talking about, you know, various positions and they reported to the bailiff that they felt he had an interest in the case.

[Defense counsel]: Well—

Record at 323–24.

At that point, the prosecutor interjected a comment concerning the reason for removing Moss. The discussion turned in that direction, and no further mention was made of questioning the remaining jurors.

The jury system is a cornerstone of our criminal justice. A vital part of the system is the trial judge's expression to the jurors of the gravity of their duty, pursuant to which jurors invest their time and integrity in performing their task. It would be therefore no great leap of imagination to suppose that one juror might resent another who had behaved inappropriately. Specifically, a juror in Threats' trial could have resented Moss's conduct. It follows, that it would be unsurprising to learn that Moss's silence and eventual removal generated prejudice for or against Threats, as equally as it would be no surprise to learn that the jurors remained impartial. We cannot say the threat of contamination was "substantial"; on the other hand, we cannot say it was "imaginary or remote." *Lindsey*, 260 Ind. at 358, 295 N.E.2d at 824. We do see, however, a "clear potential" for a tainted verdict. *Fox*, 457 N.E.2d at 1092. The deciding point is that Moss's conduct reasonably might have engendered prejudice among the jurors, yet the trial judge took no action to ascertain that, despite his perception that what had transpired "seem[ed] to be a stumbling block in the jury room" and "[jurors] reported to the bailiff that they felt [Moss] had an interest in the case." Record at 324, 326. *Cf. Von Almen v. State* (1986), Ind., 496 N.E.2d 55, 57, *reh'g denied* (proper for trial court to forgo *Lindsey* hearing where potential influences were harmless or only remotely related to trial issues).

The prime consideration of a trial judge is the integrity of a trial, which requires "the best reasonably available steps to assure a verdict free of improper influences...." *Lindsey, supra.* In this case, the trial judge did take the reasonably available step of replacing a problematic juror. The step was taken two hours into the jury's deliberations, however, and only after the presence of the one created friction among the others. In such circumstances, protecting the integrity of the yet unrendered verdict demanded at least part of the additional, reasonably available procedure outlined in *Lindsey:* either questioning the jurors collectively as to whether any had been affected by Moss's conduct, or, at a minimum, questioning the juror who had summoned the bailiff; and, in both instances, firmly instructing the entire jury to disregard the removal of Moss and to reach a verdict based strictly on the evidence. *See Gray v. State* (1990), Ind., 563 N.E.2d 108, 112, *reh'g denied* (replacement during trial of possibly pro-defense juror not error; trial judge admonished jury). *Cf. Olson v. State* (1990), Ind., 563 N.E.2d 565, 570–71 (no need to question entire jury after replacing juror during trial where juror did not discuss the potential prejudice with other jurors); *Gregory v. State* (1989), Ind., 540 N.E.2d 585, 590 (trial judge questioned jurors collectively "whether anything had happened that might have affected the jurors' ability to adhere to the court's admonitions"; jurors' negative answers eliminated need for individual questioning or mistrial); *Dixon v. State* (1988), Ind., 524 N.E.2d 2, 4, *cert. denied* (1991) — U.S. ——, 111 S.Ct. 1113, 113 L.Ed.2d 222 *reh'g denied* (no mistrial necessary where trial judge interrogated possibly prejudiced juror individually and "admonished the entire jury to disregard the independent interrogation of the juror").

As explained in *Lindsey*, Threats' motion for mistrial was premature. No basis for the motion existed before an inquiry into whether the jurors had been affected by Moss's conduct. The result of such an inquiry would have guided the trial judge's ruling on a subsequent motion for mistrial. However, Threats' motion for mistrial brought the problem squarely before the trial judge and "should have brought forth appropriate remedial action." *Lindsey, supra.* In the absence of such remedial action, we cannot be certain that the verdict was free of improper influences.

Accordingly, the conviction must be reversed and the case remanded for a new trial.

SHIELDS, J., concurs.

RUCKER, J., dissents with opinion.

RUCKER, Judge, dissenting.

I respectfully dissent. While I agree *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819, guides our analyses of the case before us, I read *Lindsey* differently than does the majority. Here, the majority takes the position that once the trial court is apprised the jury has been exposed to possibly prejudicial information, the court then has the responsibility of taking remedial action. I cannot agree.

In *Lindsey*, our supreme court makes clear, that once presented with possibly prejudicial information, the trial court must first make a threshold determination whether there is an actual likelihood of prejudice. The trial court makes that determination by examining the content of the alleged prejudicial publication. If and only if, "the risk of prejudice appears substantial, as opposed to imaginary or remote" should the court then "interrogate the jury collectively to determine who, if any, has been exposed" and take additional remedial action. *Id.*, 295 N.E.2d at 824; *see also, Gregory v. State* (1989), Ind., 540 N.E.2d 585, 589 quoting *Lindsey, supra*. Absent a showing, in the first instance, that the supposed prejudicial information actually raised a "risk of substantial prejudice" the trial court has no responsibility to interrogate the other jurors or take any further remedial action.

The record before us shows the trial court made an initial inquiry in this case and apparently determined there was no risk of substantial prejudice. Moss was questioned in some detail and revealed he advised his fellow jurors that he was acquainted with the defendant as well as defendant's wife. After this revelation the jurors opined that Moss should not continue deliberating. Moss advised the court and counsel as follows:

They didn't ask me. I volunteered the information that I know him. All right? But I didn't know who he was married to or his wife, so I didn't know until she came in, you called her in and it's the wife that I saw at that time. So, I was in there deliberating, I was the foreman of the jury and I made mention and they thought it was hard on me, that it was unfair to me, you know, because I know, you know the wife as well as the husband, to deliberate, I guess.

*Record* at 310. Moss further indicated:

Do you know what they refer to, your Honor, if I can explain to you? The one guy said that it was a case that he was dealing with a while back and one of the jurors knew the defendant. All right? And they found the man guilty. All right? And the man got up on his way out of the courtroom and pointed his finger and said when I get out, you know, and so that's the kind of stipulation that they were running to, you know, maybe you're in trouble now or something, you know, if you decide to go this away or the other way, you know.

*Record* at 319.

The majority in this case seems to suggest the foregoing conversation, by itself, warrants further inquiry of the remaining panel because we cannot determine what impact, if any, it may have had on them. However, unlike the newspaper article in *Lindsey, supra*, here, Moss' conversation with his fellow jurors on its face is harmless and non-prejudicial. There was no need for the trial court *sua sponte* to conduct further inquiry.

The record here also shows defendant did not request the trial court to question the jurors to determine whether they were prejudiced by Moss' conduct. Rather, after the trial court decided to remove Moss from the panel, defendant queried whether the trial court would "call the jury in now and explain to them why you did this?" Defendant's failure to make such a request is critical and the case of *Smedley v. State* (1990), Ind., 561 N.E.2d 776, is instructive. In *Smedley*, appellant moved to strike the entire panel when, on the second day of *voir dire*, one juror indicated she heard a conversation in the jury room to the effect that appellant had "killed a lady." The motion was denied. On appeal, appellant, citing *Lindsey*, argued when this "possibility of bias and prejudice" was brought to the attention of the trial court, the court should have examined the jury to deter-

mine whether any prospective juror had been influenced by the discussion of the case and that failure to do so was error. Our supreme court disagreed and held:

We see little danger of prejudice from such a general characterization of the case as alleged in counsel's verbatim objection. Moreover, we observe that appellant never requested the trial court to question the jurors whether they had been prejudiced by any such remarks.

*Smedley, supra* at 780.

In the case before us Moss' conversation with his fellow jurors, in my opinion, demonstrated no danger of prejudice. Further, as in *Smedley*, the defendant here never requested the trial court to interrogate the jury. The trial court did not err in this case and defendant's conviction should be affirmed.