**Bennie GAVIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9511–CR–661.

Court of Appeals of Indiana.

Sept. 17, 1996.

Robert C. Perry, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

FRIEDLANDER, Judge.

Following a jury trial, Bennie Gavin was convicted of Voluntary Manslaughter [1], a Class A Felony, and Carrying A Handgun Without a License [2], a Class A Misdemeanor.

We reverse.

---

1. Ind.Code Ann. § 35–42–1–3 (West Supp.1996).

2. Ind.Code Ann. § 35–47–2–1 (West Supp.1996).

The facts favorable to judgment are that, on November 10, 1993, Gavin and his girlfriend Bridget Kelly got into a violent argument in the home that they shared with their two young daughters, Kelly's brother William Starks, and Starks's two sons. The argument turned into a fight. Starks broke up the fight between Kelly and Gavin and told Gavin to leave. Gavin left the house in a rage, saying that he would be back. Starks and his sons left the home and spent the night elsewhere.

Gavin went to a friend's home and borrowed a gun. When Gavin returned, he and Kelly again began to quarrel.

When Starks returned home the next day, he found Kelly dead on the kitchen floor, with Kelly and Gavin's daughters standing over her. An autopsy revealed that the cause of Kelly's death was a gunshot wound just behind the left ear. The gun had been fired from 1/2 inch to 1-1/2 inches away.

Gavin initially denied shooting Kelly, but later admitted that he shot her. He claimed that Kelly threw a statue of praying hands at him, which hit his arm and caused the gun to go off.

During Gavin's trial on charges of murder and carrying a handgun without a license, after the jury had deliberated for six hours, the jury foreman informed the judge that the jury wanted to see him about one of the jurors. The trial judge informed the foreman that he preferred that the jurors return to deliberations and asked if a juror was too ill to deliberate. When the judge learned that the concern did not relate to illness of a juror, he instructed the jury to continue with deliberations.

At approximately 1:20 a.m., the judge stated on the record in the presence of counsel that he had received a note from the jury which stated: "Due to an incident in [Juror Souviner's] past he feels it impossible to make any decision in our deliberations. And he asks to be excused from the jury at this time." Record at 177, 901. The judge determined that, if the note was written by the foreman and the jury as a whole was aware of it, he would discontinue deliberations at that time, sequester the jury in a local hotel,

and resume the case later in the day. The judge stated: "Let's do it that way. I would prefer to have a clear head before I discharge this. A four-day trial is a lengthy trial and I don't want to call it hung unless I've got to call it hung. Let's bring them out." Record at 908.

After ascertaining that the foreman had authored the note and that the jury as a whole was aware of it, the judge stated:

It is my decision, ladies and gentlemen, as difficult as it is, that we are going to put you up for the evening across the street in a hotel and we will bring you back here at about nine o'clock tomorrow morning to continue and it will also give the Court an opportunity to do some further looking into the ramifications of this note.... This case has gone on for four days and I know it's difficult but it's important that this whole proceeding be done with careful deliberation by all of us, including yours truly here.

Record at 910–911.

The next morning, before questioning Juror Souviner about the accuracy of the note, the trial judge stated that he was going to exclude Juror Souviner after questioning him about his reasons for the claimed inability to make a decision and about his interaction with the other jurors and then determine the proper course of action to take. The judge stated:

And the Court would just state on the record that since last night I have conferred with the Indiana Judicial Center and the Court is satisfied that the best means of handling further this matter of Mr. Souviner's feeling that it's impossible for him to make any decision in the deliberations and he asks to be excused shall be handled as follows: I'm proposing to bring Mr. Souviner out on the record with the understanding beforehand that I'm going to at the very least exclude him and that we're going to question him in detail as to what the underlying reasons are for his inability to make any decision and then we're going to try and get a feeling from him as to what he's told the other jurors and what they have said to him. And from that, if it's necessary, after having received

the fax of [*Threats v. State*, 582 N.E.2d 396 (Ind.Ct.App.1991), *trans. denied*], from the Indiana Judicial Center, the Court will then be making a decision as to whether it is appropriate to bring the entire panel back in and make further inquiry and/or simply place the alternate, the remaining alternate with the jury and/or declare a hung jury and/or mistrial. So that is the procedure that we are going to follow.

*Record* at 911–913.

Defense counsel objected to the trial judge employing this procedure, stating:

Mr. Gavin objects to any communication between the jurors and the Court. He further objects to the Court talking to the juror [sic] collectively with the jury or by himself. And at this time there he would ask the Court not to do this as he believes this would impair his right to a fair trial or to receive a fair decision from the jury.

*Record* at 914. After the prosecutor responded that the State agreed with the judge's decision, the judge stated:

I can understand how that may be a legitimate position in a one day trial, but this trial has lasted four days, it's of the highest seriousness and I do believe we're going to try and do everything we can to arrive at a just and fair verdict. And so with that, I would ask that Mr. Souviner be brought into the court here. And please do not do anything other than ask Mr. Souviner to come in and bring his coat with him if he has it. And can we have the other "mike", we're going to do it from the bench. So we can all come forward if you wish. Well, actually, since I've already decided he's gone, let's do it from the witness chair. Before he comes in, he is juror number four, George Souviner, S-o-u-v-i-n-e-r, I think also I want to make it part of the record that I do not feel that it would be in the best interest of justice to attempt to rehabilitate this juror. And that's the conclusion I've made. I'm just afraid that that is a direction fraught with danger.

*Record* at 914–916.

When Juror Souviner was brought into the courtroom, the following colloquy occurred:

THE COURT: Mr. Souviner, the Court's going to ask you a few questions and after I'm done I think the parties may have a few questions to ask you also. And I just want to begin by saying that last night just before midnight, I believe, I was passed a note from the jury foreman that said that due to an incident in Mr. Souviner's past he feels it impossible to make any decision or deliberation and he asks to be excuse [sic] from the jury at this time. Are you aware of that note?

MR. SOUVINER: Yes.

THE COURT: Is it, in fact, correct?

MR. SOUVINER: Yes.

THE COURT: Did you make the underlying incident that you refer to in this note known to the other jurors?

MR. SOUVINER: Yes.

THE COURT: You told them the specific incident?

MR. SOUVINER: Yes.

THE COURT: One incident we're speaking of?

MR. SOUVINER: Yes.

THE COURT: Would you please tell me what that incident is[?]

MR. SOUVINER: I cannot—this happened over fifty years ago. But there was a man convicted of a crime, sentence [sic] I think it was like thirty years. And after he was in jail ten years they found out he was innocent. So I am overly influenced to be protective on my decision.

THE COURT: Now, is [sic] this man that you're speaking of was he someone who was close to you?

MR. SOUVINER: No, I just knew the situation.

THE COURT: Was he someone in your neighborhood or your town?

MR. SOUVINER: Well, that was back when I lived around the ballpark. There was a man around the ballpark there lived there—

THE COURT: On the westside of Indianapolis?

MR. SOUVINER: Yes. And I did not know the man personally, but I just knew of the situation and that has influenced

[sic] through the years but I didn't realize it when I got my, signed that thing on the back of my summons that this influenced [sic] because I'd forgotten it was on my mind.

THE COURT: When did it come to your attention?

MR. SOUVINER: Well, when we started voting. I mean—

THE COURT: You didn't remember it until you were back in the jury room?

MR. SOUVINER: Right.

THE COURT: Through all the days of evidence as you sat there you didn't remember that?

MR. SOUVINER: Well, I think it hit me about our second voting in there, that's when it hit me because of the way the vote was going.

THE COURT: I don't want to know how the vote was going. I don't want to know—I believe if we just stick to my questions. I'm going to try and avoid any contact whatsoever or knowledge as to exactly what's going on back there. That's not the province nor is it the interest of the Court. But what I need to know is this, was this such an overwhelming thing that the other jurors put pressure on you about it or is this your own free decision as to your inability to not make any decision?

MR. SOUVINER: I made a decision, but I was influenced by this incident and I told this to the rest of the jurors.

THE COURT: And you took your decision back?

MR. SOUVINER: No.

[DEFENSE COUNSEL]: Your Honor, I'm going to object to the line of questioning as we stated before. Based on what Mr. Souviner is saying, apparently he's not willing to vote guilty. Apparently, if that's the case then what we're talking about is a hung jury. And he said he can't be rehabilitated. At that point there our position is that rather than him being replaced he either stays on that jury and we end the questioning here or we declare a mistrial, Your Honor.

THE COURT: I have already made the decision that I'm not going to rehabilitate

Mr. Souviner, that's not my purpose in bringing him out and that's not going to be done. And the Court is going to continue with its questioning. I'm going to overrule the objection. I understand it. Now, Mr. Souviner, looking back at the note, the note says that it is impossible for you to make any decision. Is that your own conclusion or were you forced into that position by the rest of the jury?

MR. SOUVINER: No, I volunteered it when the process of voting came up this brought it to my attention and then I told the rest of the jurors of the situation.

THE COURT: So you told them all of the specifics?

MR. SOUVINER: Yeah, near as I can—this happened fifty years ago and I couldn't even tell you the person's name or anything right now. But this has been in the back of my mind all the way through my life.

THE COURT: And so basically you are—were you voting at that point to acquit the defendant?

MR. SOUVINER: Yes.

THE COURT: To vote not guilty?

MR. SOUVINER: Yes.

THE COURT: So you were willing at that point in time to enter a not guilty verdict; is that right?

MR. SOUVINER: Yes.

THE COURT: And why did you not stick with your not guilty verdict? Or did you stick with your not guilty verdict?

MR. SOUVINER: I did stick with it.

[DEFENSE COUNSEL]: We're talking about a hung jury, Your Honor. He's not saying he couldn't render a decision, he has voted not guilty.

THE COURT: I understand what you're saying. Do you feel that the other jurors have forced you out of the process?

[DEFENSE COUNSEL]: I would object, Your Honor. At this point here he can't be forced out. He's testified he would not vote guilty. At that point here he can't be forced out. He's testified that he would not vote guilty. At that point there it sounds like, if anything, the jury has been

**444**

tainted or they have violated your own instructions, that they're trying to force him to vote with the majority or the rest of them. And as such, Your Honor, we would move for a mistrial.

THE COURT: I'm going to turn this over for questioning by the State at this time. . . .

\* \* \* \* \* \*

[THE PROSECUTOR]: Well, first of all I guess I need to, this is sort of odd, but I'm objecting to [defense counsel's] objection to the Court's questioning. I think all the Court is trying to do here is to establish exactly where we are and what the situation is so it knows how to deal with it. Mr. Souviner, and I'm going to be reviewing some of what the Court has asked you, so I ask your patience on that, but I want to make sure that I know exactly where we are and where you are. The note that came out said that you could not make any decision.

MR. SOUVINER: Oh, no.

[THE PROSECUTOR]: That's not true?

MR. SOUVINER: That's not true.

[THE PROSECUTOR]: So you're telling us that you had, in fact, reached a decision about what your vote would be in this case?

MR. SOUVINER: Yes.

[THE PROSECUTOR]: Now, how do we get to the position then where the rest of the jury apparently believes that you can't make a decision at all?

\* \* \* \* \* \*

[DEFENSE COUNSEL]: It doesn't make any difference. He has stated he formed his opinion, he made his decision. Now what the rest of the jurors are doing doesn't make any difference as to why they came to the conclusion that he couldn't form any opinion one way or the other. He has specifically stated that he came to a decision and he stuck by it. At that point there is no further question about what the other jurors are doing, we don't need to know that. If he's not going to change his decision then we're talking about a hung jury.

THE COURT: We may well be talking about that, but I'm going to allow the questioning to proceed. . . . I'm overruling your objection. . . .

[THE PROSECUTOR]: Now, do we have you saying that you did have a decision, that you did know what your vote was.

MR. SOUVINER: Yes.

[THE PROSECUTOR]: And yet we have the foreman sending out the note saying that you couldn't reach any decision at all. Now, do you know how that inconsistency developed? I mean did you say to the jurors I guess I really can't make up my mind, or did they say to you, hey look, you just can't make up your mind? I mean how did we get this inconsistency where the note says he can't decide and you come in and tell us, yes, I did decide?

MR. SOUVINER: I think the first time we came out he didn't know he had to write a note. So when we went back in he then wrote the note.

THE COURT: Did you read the note?

MR. SOUVINER: I did not read the note.

THE COURT: Did he read it to you?

MR. SOUVINER: He passed it around to the jurors, the other jurors, and I never even looked at it. I assumed, you know, it was stating what I had said.

THE COURT: What had you said?

MR. SOUVINER: Well, I had voted one way and I was sticking to that vote.

THE COURT: [Prosecutor], continue on. I think we've probably reached the point of knowing what to do, but go ahead.

[THE PROSECUTOR]: Mr. Souviner, you heard all the evidence in this case, correct?

MR. SOUVINER: Yes.

[THE PROSECUTOR]: And the Court instructed you that you were to base your verdict, whatever that was, solely on the evidence you heard in this case.

MR. SOUVINER: Yes.

[THE PROSECUTOR]: Now, the decision that you reached, was that based just on the evidence that was presented in this case or was your decision reached as a result of this outside event that you've

been telling about, did that influence your decision?

MR. SOUVINER: I made my best decision I can bank [sic] on the evidence presented here. When I came out, (indiscernible) I was not influenced by this other incident.

[THE PROSECUTOR]: So that was in your mind as you reviewed the evidence here and that did enter into your decision?

MR. SOUVINER: Say that again.

[THE PROSECUTOR]: So that other incident that you've described to us was part of your decision in this case?

MR. SOUVINER: Yes.

[THE PROSECUTOR]: That's all the questions I have, Judge.

THE COURT: Mr. Souviner, you never wavered from your decision; is that right?

MR. SOUVINER: No. I had—

THE COURT: You never changed your decision?

MR. SOUVINER: No.

THE COURT: It was your decision from the beginning when you went in there?

MR. SOUVINER: Yes.

THE COURT: In other words, not guilty was your decision when you went in there?

MR. SOUVINER: Yes.

THE COURT: In your mind. And you stayed with that position; is that correct?

MR. SOUVINER: Yes.

THE COURT: Okay. [Defense counsel], you may question Mr. Souviner if you wish.

[DEFENSE COUNSEL]: Mr. Souviner, did you form the opinion of not guilty after you got into the jury room and went over the evidence with the other jurors?

MR. SOUVINER: Sometime during the trial.

[DEFENSE COUNSEL]: Was your decision based on the evidence?

MR. SOUVINER: Yes.

[DEFENSE COUNSEL]: That you heard in the trial?

MR. SOUVINER: Yes.

[DEFENSE COUNSEL]: No other questions.

[THE PROSECUTOR]: May we follow up on that, Judge?

THE COURT: Yes, just on that. ·

[THE PROSECUTOR]: Mr. Souviner, what I heard you say was that your decison in this case was also based or influenced by something outside the evidence that had happened at another time; is that right?

MR. SOUVINER: I would say yes.

[THE PROSECUTOR]: Thank you.

[DEFENSE COUNSEL]: Could I ask another question?

THE COURT: Go ahead.

[DEFENSE COUNSEL]: We're talking about the other influences where [sic] your common sense and your everyday experiences in life?

MR. SOUVINER: Say that again.

[DEFENSE COUNSEL]: Your decision was also affected by your experience in life and your common sense?

MR. SOUVINER: Well, from fifty years ago, yes.

\*     \*     \*     \*     \*     \*

THE COURT: Mr. Souviner, the Court at this time has to under .the rules that I believe apply in this kind of a situation let you go home. I'm going to dismiss you from the jury at this time. It's not because you wanted to vote not guilty, it's because of the more complicated aspects of the deliberation process itself. And I want you to know that the Court is very grateful for your assistance in this matter. I know you listened attentively to the evidence, I've watched you during the trial and the instructions and you have my personal thanks for all of that. Of course, we all wish that somehow you might have remembered this earlier, but that's the way things are.

MR. SOUVINER: I apologize for not.

THE COURT: I understand. So at this time I'm going to let you go home.

*Record* at 917–942.

After Juror Souviner was dismissed, the prosecutor argued that the judge should replace him with an alternate because it was

clear that he had not based his decision in this case solely on the evidence presented at trial and therefore had not followed the judge's instructions and had not properly fulfilled his duties as a juror. When asked by the trial judge whether the jury panel had been contaminated by the situation, the prosecutor responded that further inquiry was necessary to determine whether the jury had been improperly influenced. When defense counsel objected to the trial judge questioning the rest of the jurors, the trial judge referred to the *Threats* opinion as support for employing such a procedure. Defense counsel responded that, in making his decision to acquit, Juror Souviner properly followed the court's instructions and relied upon his life experiences and the evidence presented in this case. Defense counsel further argued that, by replacing Juror Souviner, the sole juror voting to acquit, with an alternate would send the message to the other jurors that the judge agreed with their decision to convict. Defense counsel argued that the jurors could not be rehabilitated using any procedure and that a mistrial should be declared.

The trial judge then recessed to allow both sides to conduct research. When the proceedings resumed, the judge stated that, after reading the *Threats* opinion and *Lindsey v. State*, 260 Ind. 351, 295 N.E.2d 819 (1973), he was going to admonish each juror individually that neither he nor the attorneys wanted to know what had been discussed during deliberations, inform each juror that he had learned that Juror Souviner had related a story about an earlier case where a man was convicted of a crime that he did not commit, and ask them if what Juror Souviner had said would influence their deliberations or verdict. The trial judge then explained that, depending on each juror's response, he would then ask whether the jurors could deliberate and reach a verdict based solely upon the evidence or lack thereof presented at trial, admonish the jurors that all of the court's instructions were to be considered, ask them whether there was any reason why they could not continue to serve, and admonish them not to discuss what had occurred in the courtroom with the other jurors.

After the prosecutor expressed agreement with the proposed procedure, defense counsel again moved for a mistrial, arguing that, regardless of the admonishments to the jurors, under the circumstances presented here, there was no way that Gavin could get a fair and impartial trial. The trial judge denied the motion for a mistrial and followed the procedure he had outlined earlier with each juror, including the alternate. At the conclusion of the proceeding, defense counsel again moved for a mistrial. The trial judge denied the motion, stating:

> The Court will deny your motion for a mistrial. I appreciate what you have said, I understand what you have said. At this time then the Court finds that the degree of exposure was slight, that the likely impact on any further deliberation of the jury is none, and that there is every reason to continue the trial and continue the deliberation. So at this time I'm going to ask that all the jurors be brought in and please place [the alternate] in the position of Mr. Souviner and bring them all back into the courtroom[.]

*Record* at 1045–1046.

After the jurors were called back into the courtroom, the judge reread the preliminary and final instructions to them and excused them to resume deliberations.

On appeal, Gavin presents the following consolidated, restated issue:

> Did the trial judge abuse his discretion in replacing Juror Souviner with an alternate juror and in denying Gavin's motion for a mistrial?

■ The trial judge abused his discretion in replacing Juror Souviner with an alternate juror and in denying Gavin's motion for a mistrial.

In *Harris v. State*, 659 N.E.2d 522, 525 (Ind.1995), our supreme court summarized Indiana law with regard to the replacement of jurors:

> Article I, § [13] of the Indiana Constitution guarantees a defendant's right to an impartial jury; therefore, a biased juror must be dismissed. Indiana Trial Rule 47(B) in part provides that "[a]lternate jurors in the order in which they are called

shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties." Trial courts have broad discretion in determining whether to replace a juror with an alternate, and we will only reverse such determinations where we find them to be arbitrary, capricious or an abuse of discretion.... An abuse of discretion occurs only if the decision placed the defendant in substantial peril. [Citations omitted.]

■ A defendant may be found to be in substantial peril where, after giving a decision of the trial court the benefit of all reasonable doubt, it can be said that the peril was such as to be incurable by instruction. *Lindsey,* 260 Ind. 351, 295 N.E.2d 819. Under the circumstances presented here, where the trial judge decided to remove a juror solely on the basis of a note that inaccurately stated that the juror could not make a decision in the case, where the juror had indeed made a decision to acquit based upon the evidence presented at trial, and where the trial judge refused to consider allowing the juror to continue deliberations even after being apprised of the facts, the removal of the juror put Gavin in substantial peril.

It may reasonably be inferred from the record that, at the point the note was written, the jury was deadlocked eleven to one. Had Juror Souviner not been dismissed and replaced with an alternate, there likely would have been, at the very least, a hung jury. While the trial judge went to exemplary lengths to try to follow appropriate procedures, his comments on the record reveal that he may have been more concerned with avoiding a mistrial in a very serious matter after a four-day jury trial than with protecting Gavin's right to a fair trial.

In *Palmer v. State,* 640 N.E.2d 415, 419 (Ind.Ct.App.1994), this court stated:

The trial court has wide discretion in determining whether to grant a mistrial, and its decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury.... To prevail on appeal, appellant must show that he was so prejudiced that

he was placed in a position of grave peril to which he should not have been subjected.... We will not reverse a trial court's ruling on a motion for mistrial absent an abuse of discretion. [Citations omitted.]

■ While removing a pro-defense juror, thereby leaving the verdict entrusted to an impartial jury, does not gravely imperil a defendant, *Threats,* 582 N.E.2d 396, removing an impartial juror who has voted to acquit based upon the evidence presented at trial and on the juror's life experiences does gravely imperil a defendant. Although isolated portions of the record could be read as support for the claim that Juror Souviner was not an impartial juror, the record read as a whole supports the conclusion that Juror Souviner was not unduly influenced by his life experiences, which included his knowledge of a prior case where an innocent person was wrongly convicted of a crime. Not only was Juror Souviner able to make an impartial decision with regard to Gavin's guilt of the crimes charged, he had indeed made such a decision, and that decision was based upon the evidence presented at trial.

Because the trial judge abused his discretion in replacing Juror Souviner with an alternate juror and in denying Gavin's motion for a mistrial, we must reverse.

Judgment reversed.

KIRSCH and RUCKER, JJ., concur.