Deatron LEE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 02S00–9905–CR–286.

Supreme Court of Indiana.

Sept. 22, 2000.

Stanley L. Campbell, Fort Wayne, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

The claim here is that a juror's brother attended a very large party at which a killing occurred. We review the law on juror bias and conclude the trial court correctly denied a request for a new trial.

## Facts and Procedural History

On July 7, 1997, at around 10 p.m., appellant Deatron Lee and his friend Allen Bates went to a private residence in Fort Wayne. Bates had with him a handgun that he customarily carried. About a hundred people were partying and drinking beer in the house and yard. Lee and Bates socialized for a few hours.

As the evening progressed, some party-goers began throwing beer, and others attempted to eject them. A fight broke out, and Bates protested that Jason Wallace had "sucker punched" another party-goer with a blow to the back of the head. (R. at 450.) Wallace overheard Bates describing this act as "weak," and Wallace and Bates began fighting. (R. at 450–52.) Bates, during a pause in the action, handed his gun to Lee to hold while Bates was brawling.

Several others joined in the fight on Wallace's behalf. Lee also became engaged in the scuffle. Lee and Bates were outnumbered, and Lee brandished Bates' gun, ordering everyone to "hold up" and/or "chill out" and declared, "I ain't playing." (R. at 457, 535.) As Lee made this statement, Wallace was standing close by Bates and Lee, facing the duo. Lee then shot Wallace in the chest. After Wallace fell, Bates kicked him. Wallace died a few days later from the gunshot wound.

Lee and Bates fled. When police officers questioned Lee three or four hours after the shooting, Lee claimed that he left the party before the shooting occurred.

A jury found Lee guilty of murder.[1] The trial court sentenced him to fifty-five years in prison.

After entry of the jury verdict and sentencing, Lee's counsel filed a motion to correct error. At a hearing on the motion, Lee's counsel unsuccessfully sought a new trial based on juror bias.

## I. Alleged Juror Bias

Lee seeks a new trial based on bias he alleges was held by a juror named Mathis.[2]

During voir dire, the court asked whether any of the prospective jurors knew any of the anticipated witnesses, or whether any jurors remembered reading or hearing anything about the case. One of the potential witnesses the court named was Ben Kimmel, who would later testify that he saw Lee shoot Wallace. Several jurors

---

1. Ind.Code Ann. § 35–42–1–1 (West 1998).

2. Lee cites as primary authority *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). In *McDonough,* a products liability case, a juror failed to disclose during voir dire that he had a son who had suffered a severe product-related injury. *Id.* at 551, 104 S.Ct. 845. The Court recognized the importance of finality of judgments and of conserving judicial resources, and held that "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for challenge for cause." *Id.* at 555–56, 104 S.Ct. 845. Justice Rehnquist wrote the *McDonough* opinion for a four-justice plurality. Justice Blackmun, joined by Justices Stevens and O'Connor, concurred in the opinion but emphasized that regardless of whether a juror answered honestly or dishonestly, the trial court has the discretion to conduct a post-trial hearing on the issue of actual juror bias or, "in exceptional circumstances, that the facts are such that bias is to be inferred." *Id.* at 556–57, 104 S.Ct. 845 (Blackmun, J., concurring). This analysis is consistent with that which has been applied by Indiana courts, as discussed herein.

spoke up about various potential witnesses, but Thomas "Zack" Mathis did not respond at that time to either question. The court empaneled a jury, including Mathis, and both parties presented opening arguments.

The next morning, however, Mathis notified the court via the bailiff that he was acquainted with Kimmel. The court promptly held a hearing at which counsel for both parties queried Mathis about the nature of his knowledge.

Mathis indicated that he had not initially recognized Kimmel's name because Kimmel was a casual acquaintance from school whom Mathis knew by first name only. During opening arguments, Mathis had realized that Kimmel might be someone he knew, and confirmed his suspicion later that evening by looking at a high school yearbook. Based upon Mathis' assertion that this acquaintance would not affect his assessment of Kimmel's credibility, neither counsel objected to Mathis' continuation as a juror.

At the hearing on the motion to correct error, Lee's counsel called Kimmel as a witness. Kimmel said he knew both juror Zack Mathis and one Ben Mathis from school. He testified that Ben Mathis (but not Zack) had been at the party where the shooting occurred. Kimmel presumed that Ben and Zack were brothers because they shared the same last name.[3] Kimmel did not know when Ben Mathis had arrived at the party, when he left, or whether he was at the party at the time of the shooting.

Lee's only other witness at the hearing was his trial attorney, who stated that he would have requested Zack Mathis be removed from the jury had this information come to light earlier. Lee's counsel did not subpoena either Zack or Ben Mathis to testify at the hearing; instead, she argued implied bias based on relationship. (R. at 995.) The court denied Lee's motion based on lack of evidence that juror Mathis possessed any special knowledge.

We have come a long way from the time of the Magna Carta, when criminal jurors were usually knights who often served on the accusing jury as well as the trial jury. *See* Lloyd E. Moore, *The Jury: Tool of Kings, Palladium of Liberty* 56 (1973). Today's jury practices strive to honor the true spirit of the concept of an impartial jury of one's peers. As Samuel Spencer of North Carolina said in 1788, "Juries are called the bulwarks of our rights and liberties; and no country can ever be enslaved as long as those cases which affect their lives and property are to be decided, in great measure, by the consent of 12 honest, disinterested men."[4] J. Kendall Few, The American Jury Trial Foundation, *In Defense of Trial By Jury* 242 (1993).

▬ As recognized in *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind.1988), a defendant who proves that a juror lied on voir dire or was biased against the defendant is entitled to a new trial, upon demonstrating both gross misconduct and probable harm. Determinations of juror misconduct fall within the trial court's discretionary authority. *Id.*

Here, Lee has not shown that juror Mathis lied during voir dire. In fact, when Mathis realized after opening arguments that he was casually acquainted with a witness, he promptly notified the court. Mathis was sufficiently forthcoming during questioning that neither party requested his removal. Thus, if Lee has a sustainable claim, it must rest upon a showing of bias.

---

3. The trial court entered a finding of fact that Zack and Ben Mathis are brothers. (R. at 148.) Because a lack of fraternal relationship would not affect our conclusion, we will presume that relationship for purposes of analysis.

4. Obviously, juries are more inclusive today than they were in 1788, as our society strives to do better justice.

One way that a litigant may prove bias is by presenting evidence of an out-of-court communication by a juror. *Timm v. State,* 644 N.E.2d 1235, 1237 (Ind.1994). Such a communication raises a rebuttable presumption of bias in order to protect the essential safeguard of jury neutrality. *Id.* Again, however, Lee has offered no proof that any out-of-court communication actually took place.

Lee's argument of bias therefore rests entirely on Mathis' fraternal relationship to someone who was at the party. The mere existence of this relationship, he asserts, implies bias and therefore justifies reversal. (Appellant's Br. at 11–12.)

Lee is correct that a juror's bias may arise by inference when the juror has some connection to the case. *Threats v. State,* 582 N.E.2d 396, 398 (Ind.Ct.App. 1991). A trial court should analyze such potential bias by considering the nature of the connection, and any indications of partiality. *Id.* The trial court "must weigh the nature and extent of the relationship versus the ability of the juror to remain impartial." *McCants v. State,* 686 N.E.2d 1281, 1284–85 (Ind.1997) (citing *Threats,* 582 N.E.2d at 398).

Here, any connection by juror Mathis to the case is purely speculative. Lee seeks a new trial because Mathis' brother, who was not called as a witness, may have been at the party when the shooting occurred and the two may have discussed the shooting. (Appellant's Br. at 11–12.) When Lee's counsel was asked at the hearing on the motion to correct error why she had not subpoenaed the brother to testify, she replied that she did not want to put a witness on the stand if she did not know what he was going to say. (R. at 995.) Conjecture of this sort falls far short of a prima facie case of bias, much less the requisite showing of gross misconduct and probable harm required for reversal.

The trial court properly denied Lee's motion for a new trial.

## II. Sufficiency of the Evidence

Lee also asserts that the evidence presented at trial was insufficient to sustain a conviction. He specifically cites certain eyewitness statements that do not support his guilt. Witness Matt Moriarity stated definitely, and witness Neal Peppler stated equivocally, that the shooter was wearing dark pants, although Lee wore white shorts to the party.

In a roughly similar vein, Lee points to the testimony of Nick Fuller. Fuller stated during his deposition that the same person who shot Wallace also kicked Wallace. He expressed uncertainty at the trial.

Inconsistencies in identification testimony go to the weight of that testimony; it is the jury's task to determine the credibility of the various witnesses and of the evidence presented. *See Parsley v. State,* 557 N.E.2d 1331, 1335 (Ind.1990). This Court looks to the evidence most favorable to the verdict along with the reasonable inferences drawn therefrom that support the jury's verdict. *Blackmon v. State,* 455 N.E.2d 586, 590 (Ind.1983).

Here, the State presented testimony by several eyewitnesses. Ben Kimmel, who had known Lee for at least six months prior to the party, saw the shooting and unequivocally identified Lee as the killer. Lee's long-time friend Allen Bates testified that he saw Lee pull the gun, looked away, heard a gunshot fired from the area where Lee was standing, looked back, and saw Lee still holding the gun. Both Mike Quintanilla and Nick Fuller were briefly introduced to Lee at the party, and later saw Lee shoot Wallace.

Without pausing to mention the details of testimony given by others who attended the party, we count at least seven different witnesses who either specifically identified Lee as the shooter, or gave descriptions that matched Lee's appearance in most respects. This evidence goes well beyond the requisite minimum of probative evi-

dence from which a reasonable trier of fact could infer guilt beyond a reasonable doubt.

### III. Jury Instruction on Intent

 Lee claims error in a court instruction on intent ("law does not require a direct statement of intent to kill," etc.). To preserve a claim of instruction error, a party must object to the instruction before the jury retires to deliberate, and must clearly state the nature and grounds of the objection. Ind. Trial Rule 51(C); *see also Scisney v. State*, 701 N.E.2d 847 (Ind. 1998). Because Lee did not object to the challenged instruction, this claim is not preserved. T.R. 51(C).

### Conclusion

We affirm the judgment of the trial court in all respects.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.