**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JEFFREY L. SANFORD**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana



FILED

Aug 22 2012, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IVAN BROWN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1201-CR-24 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable R.W. Chamblee, Jr., Judge
Cause No. 71D08-1004-FB-41

**August 22, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Ivan Brown appeals his conviction for Class B felony Burglary.[1] Specifically, Brown contends that the evidence is insufficient to support his conviction. We affirm.

## FACTS AND PROCEDURAL HISTORY

At some point during the early afternoon hours on April 24, 2010, Donnie Siders was in his home on the 1100 block of West 7th Street in Mishawaka, when he heard his dog barking in the backyard. Siders went to the window and saw two men, one black and one white. Siders saw the white man pulling a suitcase and the black man carrying two pillowcases in the alley behind his home. The men were "in a hurry" and "walking fast" in a westward direction toward Cleveland Road. Tr. pp. 22, 28. As Siders went to the alley to "see what they were doing," Beth Donathen drove by and asked Siders what was happening. Tr. p. 23. Siders informed Donathen of what he saw and asked her to follow the men, who had proceeded north on Cleveland Road. Siders returned to the alley where he noticed the suitcase that he had seen the white man pulling lying by a telephone pole. Upon investigation, Siders saw a television inside the suitcase. Siders then called the police.

At approximately the same time that Siders saw the men, Sharry Bruster saw two men, one black and one white, "run walking" through her neighborhood around 7th and 8th Streets and Cleveland Road moving toward Logan Street carrying what looked like "knapsacks on their back." Tr. pp. 113, 114. Bruster also notified the police. In addition, Mark Tobar, who lived approximately one-half block away from Siders, informed police and later testified that,

---

[1] Ind. Code § 35-43-2-1(1) (2009).

at approximately the same time as Siders and Bruster, he saw two men, one black and one white, "walking very fast" while "carrying sacks over their shoulders" cutting through his driveway and into the alley. Tr. pp. 127, 128.

Donathen followed the men until they were near the Family and Children Center ("FCC") located at Logan Street and Lincoln Way East in Mishawaka. Donathen updated Siders of the men's whereabouts, and Siders called the police a second time to provide them with an update of the men's location. Donathen saw a Mishawaka police officer arrive at the FCC and pointed toward the men before leaving. Donathen then returned to Siders' home.

Officer Michael Robinson of the Mishawaka Police Department responded to the multiple calls concerning two suspicious men running through an alley near 7th Street. While en route, Officer Robinson was advised that the men, one white and one black, were now on Lincoln Way in front of the FCC. Officer Robinson noticed Donathen pointing toward a white man and a black man, who matched the description given by dispatch. The two men were the only people in front of the FCC. Officer Robinson approached the men and ordered them to stop. The men complied with Officer Robinson's request, at which time he observed that they were sweating, despite the weather being overcast and the temperature being about sixty degrees. Officer Robinson subsequently identified the black male as Brown and the white male as Troy Hardy.

Sergeant Cynthia Reed of the Mishawaka Police Department arrived at the FCC, approached Brown, and because of officer safety concerns, "patted him down for weapons." Tr. p. 173. During the pat-down, Sergeant Reed felt "a very large hard object in [Brown's]

3

front right pocket." Tr. p. 173. Sergeant Reed removed the object from Brown's pocket and discovered that it was "a large wad of $2 bills with a … cigarette lighter in the middle of it." Tr. p. 174. Corporal Ahmed Jojo of the Mishawaka Police Department also found a pair of gloves on Brown's person.

Hardy was placed in the back of Officer Robinson's service vehicle, and Brown was placed in the back of Corporal Jojo's service vehicle. Both Officer Robinson and Corporal Jojo drove their vehicles back to the scene of the original dispatch and spoke with Siders who identified Hardy and Brown as the men he saw moving quickly through the alley with the suitcase and two bags. Officer Robinson recovered the suitcase containing the television from the alley between 6th and 7th Streets. The suitcase had a luggage tag attached which bore the victim's name and address. Officer Robinson later found two pillow cases that held a laptop computer, a digital camera, a PlayStation II game console, a Nintendo DS game, numerous video games in their cases, jewelry, and a pin in a little plastic box.

The officers spoke with the victim who indicated that she had left her home about 12:45 p.m. to attend her son's soccer game. While at the soccer game, the victim received a phone call alerting her that her home had been burglarized. The victim immediately returned home where she saw that the intruders had broken a small glass pane above the lock in her back door and ransacked her home. Upon inspection, the victim reported that the following items were missing from her home: a television, a PlayStation game console, a Nintendo DS, numerous video games, a laptop computer, a digital camera, all her jewelry, a suitcase, pillow cases, and a collection of $2 bills that she had received on holidays and birthdays from her

4

grandmother as a child. The victim did not know Hardy or Brown or give either man permission to enter her home.

On April 27, 2010, the State charged Brown with Class B felony burglary, with Class D theft as the intended felony. Brown's first jury trial, which commenced on February 1, 2011, ended in a mistrial. Following a second trial, the jury found Brown guilty of Class B felony burglary on November 16, 2011. On December 14, 2011, the trial court imposed a thirteen-year term of incarceration with three years suspended and four years of probation. This appeal follows.

## DISCUSSION AND DECISION

Brown contends that the evidence is insufficient to support his conviction for Class B felony burglary.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.… The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). Inconsistencies in witness testimony go to the weight and credibility of the testimony, "the resolution of which is within the province of the trier of fact." *Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

5

In order to convict Brown of Class B felony burglary, the State was required to prove that Brown broke and entered into the dwelling of another person, "with the intent to commit a felony in it." Ind. Code § 35-43-2-1(1). "To establish the intent to commit a felony element of a burglary charge, the State must prove beyond a reasonable doubt the defendant's intent to commit the felony specified in the charge." *Freshwater v. State*, 853 N.E.2d 941, 942 (Ind. 2006) (citing *Justice v. State*, 530 N.E.2d 295, 296 (Ind. 1988)).

Here, the State alleged that Brown entered the victim's home with the intent to commit Class D felony theft. Brown does not challenge the sufficiency of the evidence supporting the fact-finder's determination relating to his intent to commit the underlying felony of theft, but rather only the sufficiency of the evidence supporting his identity as the perpetrator of the burglary and theft. In raising his claim, Brown points to certain inconsistencies in what the witnesses describe him and Hardy to be wearing on April 24, 2010. Brown acknowledges that conflicting evidence is generally considered most favorable to the fact-finder's determination, *see Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*, but claims that the inconsistencies in the witnesses' recollection as to what he was wearing on the day in question are of such magnitude that they seriously call into question the witnesses' identifications of him as the perpetrator. We disagree.

It is well-established that an eyewitness's identification testimony is sufficient to sustain a conviction. *Rutherford v. State*, 866 N.E.2d 867, 871 (Ind. Ct. App. 2007) (citing *Badelle v. State*, 754 N.E.2d 510, 543 (Ind. Ct. App. 2001)); *see also Lee v. State*, 735 N.E.2d 1112, 1115 (Ind. 2000).

6

> Any inconsistencies in identification testimony go only to the weight of that testimony, as it is the task of the fact-finder to weigh the evidence and determine the credibility of the witnesses. [*Badelle*, 754 N.E.2d at 543]. We do not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. *Id*.

*Rutherford*, 866 N.E.2d at 871.

Here, the evidence demonstrates that although the witnesses had conflicting recollections of what the perpetrators were wearing on the day in question, Siders, Bruster, and Tobar each testified that one perpetrator was a black man and one was a white man. Siders identified Brown as the black male that he saw carrying the bags and Hardy as the white male that he saw pulling the suitcase. Officer Robinson testified that upon his arriving at the FCC, Donathen, who had followed the perpetrators from the alley to the FCC, indicated that Brown and Hardy were the individuals who had been witnessed pulling the suitcase and carrying the bags which were subsequently found filled with the victim's stolen property. Furthermore, at trial, Siders positively identified Brown as the black male that he saw carrying the bags through the alley.

The jury, acting as the fact-finder, weighed the inconsistencies between the witnesses' statements about what the perpetrators were wearing on the day in question and determined that the identification of Brown was credible. The jury determined that this testimony was sufficient to prove that Brown committed Class B felony burglary by entering the home of the victim with the intent to commit Class D felony theft. We agree. Brown's claim to the contrary amounts to an invitation for this court to reweigh the evidence and to re-evaluate issues of credibility, which, again, we will not do. *See Stewart*, 768 N.E.2d at 435;

7

*Rutherford*, 866 N.E.2d at 871.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.