Dennis **BARNETT**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0904–CR–210.

Court of Appeals of Indiana.

Nov. 12, 2009.

Transfer Denied Jan. 7, 2010.

Corey L. Scott, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Dennis Barnett appeals his convictions for two counts of child molesting as class C felonies.[1] Barnett raises two issues which we revise and restate as:

I. Whether the trial court abused its discretion by denying Barnett's motion for mistrial; and

II. Whether the trial court abused its discretion by excluding Barnett's videotaped statement to the police.

We affirm.

The relevant facts follow. During the summer of 2008, seven-year-old A.S. played with her friend S., who lived nearby. S. lived with her mother, her grandmother, and her grandfather, Barnett, who was born on December 13, 1949. A.S. would play on the computer while sitting in Barnett's lap. While A.S. was playing on the computer with Barnett, he "just started touching [A.S.] in wrong places" or "[b]ad places that you're not supposed to touch" or "private spots." Transcript at 20–21. Barnett touched her "[a]lmost everyday" in her "private part" that she uses to go to "the bathroom." *Id.* at 21–22. Barnett always touched A.S. on the inside of her underwear and "would just like put his hand" in the front of her pants "and just left it there." *Id.* at 24. Sometime Barnett's hand went on the inside of A.S.'s "private spot," which hurt A.S. *Id.* at 25. At one point, Barnett also put his hand on the backside of A.S.'s "private part" or the part that she uses to "go number . . . two." *Id.* at 29. A.S. told Barnett to stop, and

Barnett said, "no, I'm a grown up. I can do what I want." *Id.* at 26–27.

A.S. eventually told her grandmother, who called the police. Barnett gave a statement to Indianapolis Police Detective Chris Lawrence.

On September 8, 2008, the State charged Barnett with two counts of child molesting as class C felonies. The State filed a motion in limine requesting that Barnett, his counsel, and any of his witnesses not refer to "[a]ny testimony or evidence relating to prior molests or accusations made by the victim of this molest, against another person or persons unrelated to this matter." Appellant's Appendix at 68. The trial court granted the State's motion.

Before the jury trial, the prosecutor stated, "we do have a statement that we may be playing for [sic] today," and "[t]he State is obviously going to make that decision in the—as the evidence goes forward." Transcript at 8. Barnett's counsel stated, "I'm gonna want to play the whole video . . . ." *Id.*

At the jury trial, the prosecutor cross examined Barnett and asked him if he ever made a statement to the police. Barnett responded affirmatively and said that he made his statement voluntarily "after two and [a] half hours of badgering." *Id.* at 113. The prosecutor then asked Barnett to read several lines[2] silently to himself and asked Barnett if that refreshed his recollection of his statement. *Id.* at 114. Barnett responded, "Yes." *Id.* The prosecutor asked Barnett questions regarding his statement to Detective Lawrence and asked Barnett to look at what appears to be a transcript of his statement to police.

---

1. Ind.Code § 35–42–4–3 (Supp.2007).

2. Although the record is not clear, it appears that the prosecutor was asking Barnett to read a portion of a transcript of his statement to the police.

The prosecutor asked Barnett if he told Detective Lawrence that he touched A.S.'s vagina, and Barnett said that he did not.

Barnett's counsel began redirect examination and indicated that he was going to play the videotape of Barnett's statement to the police and he moved to admit the statement. The State argued that the videotape was inadmissible because the videotape was not offered as substantive evidence and the videotape contained evidence that was deemed inadmissible by the court in its order on the State's motion in limine.[3] Barnett's counsel stated, "Judge, I'll take that part out, stop it and fast forward past it." *Id.* at 126. The trial court denied Barnett's motion to admit the videotape because "[i]n a limited sense the State used the transcript to refresh the defendant's recollection on the stand." *Id.* at 134. Barnett's counsel continued with redirect examination, and Barnett testified that he did not bring up the word "vagina" in the police interview, which lasted over two and a half hours. *Id.* at 135.

During the redirect examination of Barnett, the trial court interrupted Barnett's counsel, admonished the jury, and removed them from the courtroom. The trial court then stated, "I'm concerned about juror nine who seems to be having a near epileptic fit on the back row." *Id.* at 124–125. The trial court brought in Juror Nine and asked her if she was "okay." *Id.* at 127. Juror Nine stated that she was

frustrated and overwhelmed. Juror Nine also stated that she felt that she already had her opinion formed, but that she had not shared her opinion with the other jurors. After Juror Nine was removed from the courtroom, Barnett's counsel stated that she was not a "good juror at this point and we have someone else to take her place." *Id.* at 131. The trial court recessed and then stated:

> My bailiff has informed me that juror number nine ... now has hives all the way up her neck and onto her face. Given the severity of her physical reaction to these proceedings I cannot in good conscience leave her on the jury. It would do more damage to her and possibly could taint the remaining 12 jurors. We are nearing the end of the trial. We have one alternate so over the State's objection I am going to remove [Juror Nine] and substitute [the alternate juror].

*Id.* at 132. Barnett then moved for a mistrial and argued:

> Previously when I objected to the officer testifying to the date of birth of that witness one of my partners was in here and said that [Juror Nine] rolled her eyes, made a scene and leaned over and said something to another juror when I did that. I think that coupled with her falling down constitutes jury misconduct and I'm not sure what she said to the other juror but we're moving for a mistrial based on her actions in the courtroom.

---

3. Specifically, the State argued:

> Two issues—first and foremost is that the tape is inadmissible still. The State did not—did not offer that tape in as substantive evidence, did [not] offer any statement of the defendant's out of context nor did it illicit any statement of the defendant out of context from the officer. Even if it had that statement is only admissible hearsay as rule 801D told us if it was made prior to the defendant having a motivation to lie[,] and

> a custodial interrogation when he's informed of the charges against him certainly meet[s] that standard. As to the second part of that is that that statement—the—we do not have a redacted copy of it and it contains evidence that has been previously ordered inadmissible by this court under its motion in limine—in its order in limine for those two reasons—

> Transcript at 126.

*Id.* at 132–133. The trial court denied Barnett's motion.

The jury found Barnett guilty as charged. The trial court sentenced Barnett to three years with forty-four days executed and the remainder suspended for the first count of child molesting. The trial court sentenced Barnett to three years with the entire sentence suspended for the second count of child molesting. The trial court ordered that the sentences be served consecutively. The trial court placed Barnett on "sex offender probation for 6 years, zero tolerance." *Id.* at 167.

## I.

The first issue is whether the trial court abused its discretion by denying Barnett's motion for mistrial. The decision to grant or deny a motion for mistrial lies within the discretion of the trial court. *Francis v. State,* 758 N.E.2d 528, 532 (Ind. 2001). "The grant of a motion for mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error." *Id.* "On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State,* 814 N.E.2d 253, 260 (Ind.2004), *reh'g denied, cert. denied,* 546 U.S. 831, 126 S.Ct. 53, 163 L.Ed.2d 83 (2005). "[T]o succeed on appeal from the denial of a mistrial, a defendant must demonstrate that the conduct complained of was both error and had a probable persuasive effect on the jury's decision." *Booher v. State,* 773 N.E.2d 814, 820 (Ind.2002).

Barnett argues that "given the closeness of the evidence and on the ultimate issue of guilt, it is impossible to say with certainty that the alleged juror misconduct by [Juror Nine], i.e., prematurely forming an opinion prior to the close of evidence, roll-ing her eyes, making comments to fellow jurors and general courtroom theatrics did not have persuasive affect [sic] on the integrity of the verdict." Appellant's Brief at 6. Barnett also argues that the trial court should have questioned the jurors about the possible impact of Juror Nine's behavior on the deliberation process.

When an event which may improperly influence the jury occurs, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the event and the likelihood of its having come to the attention of any juror. *Lindsey v. State,* 260 Ind. 351, 358, 295 N.E.2d 819, 824 (Ind.1973). "However, the trial court is obligated to take the remedial action of interrogating the jury only if the court determines, in its discretion, that 'the risk of prejudice appears substantial, as opposed to imaginary or remote only.' " *Agnew v. State,* 677 N.E.2d 582, 584 (Ind.Ct. App.1997) (quoting *Lindsey,* 260 Ind. at 358, 295 N.E.2d at 824), *trans. denied.* "Thus, if the court determines that exposure to assertedly prejudicial information does not raise a substantial risk of prejudice, it has no responsibility to interrogate the jurors or to take further remedial action." *Id.*

Here, before Barnett's counsel requested a mistrial, the trial court and counsel spoke with Juror Nine, and Juror Nine stated that she felt that she already had her opinion formed, but that she had not shared her opinion with the other jurors. After the trial court removed Juror Nine from the jury, Barnett's counsel requested a mistrial as stated herein. The trial court denied Barnett's motion for a mistrial and stated:

.... I did not observe any misconduct. When [Juror Nine] began to have a reaction I suspended the proceedings immediately and had her removed from the remainder of the jury. I frankly

was not certain whether she was having a medical reaction, she was reacting to something that she ate or otherwise. As far as I knew at that time it might have been bad shellfish. I don't—I didn't know. I do know now that she is having a reaction to these proceedings in total and that's the reason that she is being removed to eliminate any potential taint to the remainder of the jury. She will be removed immediately. [The alternate juror] will be advised that he is assuming full juror status and that will be all.

Transcript at 133.

Because Juror Nine had already stated that she had not expressed her opinion to the other jurors and the trial court determined that there was no risk of prejudice, it had no responsibility to interrogate the jurors or to take other remedial action.

*See Agnew*, 677 N.E.2d at 584. We cannot say that Barnett demonstrated that the conduct complained of was both error and had a probable persuasive effect on the jury's decision. Under the circumstances and in light of the fact that a trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury, we cannot say that the trial court abused its discretion by denying Barnett's motion for a mistrial.[4] *See Agnew*, 677 N.E.2d at 584–585 (rejecting the defendant's claim that the trial court's denial of his motion for mistrial was an abuse of discretion because the trial court failed to rule out the possibility of prejudice by interrogating the individual jurors).

## II.

The next issue is whether the trial court abused its discretion by excluding Bar-

---

4. Barnett relies upon *Threats v. State*, 582 N.E.2d 396 (Ind.Ct.App.1991). In *Threats*, during jury selection, it was discovered that a member of the venire, Moss, had known the defendant years before. 582 N.E.2d at 398. Nevertheless, Moss was not struck from the jury, and eventually became its foreman. *Id.* Then, two hours into the jury's deliberation, Moss revealed to the other jurors that he knew Threats's wife. *Id.* One of them called this to the attention of the bailiff, who informed the judge. *Id.* The trial court replaced Moss with an alternate juror. *Id.* Threats then moved for a mistrial, which the trial court denied. *Id.* On appeal, the defendant argued that the trial court erred by not admonishing the jury regarding Moss's removal. *Id.* The court held:

> A vital part of the system is the trial judge's expression to the jurors of the gravity of their duty, pursuant to which jurors invest their time and integrity in performing their task. It would be therefore no great leap of imagination to suppose that one juror might resent another who had behaved inappropriately. Specifically, a juror in Threats' trial could have resented Moss's conduct. It follows, that it would be unsurprising to learn that Moss's silence and eventual removal generated prejudice for or against Threats, as equally as it

would be no surprise to learn that the jurors remained impartial. We cannot say the threat of contamination was "substantial"; on the other hand, we cannot say it was "imaginary or remote." *Lindsey*, 260 Ind. at 358, 295 N.E.2d at 824. We do see, however, a "clear potential" for a tainted verdict. [*Fox v. State*, 457 N.E.2d 1088, 1092 (Ind.1984)]. The deciding point is that Moss's conduct reasonably might have engendered prejudice among the jurors, yet the trial judge took no action to ascertain that, despite his perception that what had transpired "seem[ed] to be a stumbling block in the jury room" and "[jurors] reported to the bailiff that they felt [Moss] had an interest in the case." Record at 324, 326.

*Id.* at 401. The court concluded that in the absence of remedial action by the trial court, "we cannot be certain that the verdict was free of improper influences." *Id.* We find *Threats* distinguishable. Here, unlike in *Threats*, there is no indication that Juror Nine knew Barnett or any of Barnett's family members or that Juror Nine's conduct might have engendered prejudice among the jurors. Also, here, the trial court did not make any statement suggesting that Juror Nine's conduct raised any stumbling block in the jury room.

nett's videotaped statement to the police. The trial court has broad discretion in ruling on the admission or exclusion of evidence. *Sallee v. State,* 785 N.E.2d 645, 650 (Ind.Ct.App.2003), *trans. denied, cert. denied,* 540 U.S. 990, 124 S.Ct. 480, 157 L.Ed.2d 385 (2003). A trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Platt v. State,* 589 N.E.2d 222, 229 (Ind.1992). Ind. Evidence Rule 103 provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and .... [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked.

█ Barnett argues that "[u]nder the completeness doctrine, [he] was entitled to introduce the videotape statement to avoid reference made to the statements on cross-examination from being taken out of context." Appellant's Brief at 9.

█ Ind. Evidence Rule 106 embodies the "completeness doctrine." *Sanders v. State,* 840 N.E.2d 319, 323 (Ind.2006). That rule provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it.

Ind. Evidence Rule 106. The doctrine's purpose "is to provide context for otherwise isolated comments when fairness requires it." *Sanders,* 840 N.E.2d at 323 (quoting *Evans v. State,* 643 N.E.2d 877, 882 (Ind.1994), *reh'g denied* ). The doctrine is designed to avoid misleading impressions caused by taking a statement out of its proper context or otherwise conveying a distorted picture by the introduction of only selective parts of the document. *Lieberenz v. State,* 717 N.E.2d 1242, 1248 (Ind.Ct.App.1999), *trans. denied.* A court need not admit the remainder of the statement, or portions thereof, that are neither explanatory of nor relevant to the portions already introduced. *Id.*

Here, Barnett testified about the conversation he and Detective Lawrence had about the alleged molestation of A.S. The State did not offer the videotape or transcript of this conversation into evidence. Thus, Ind. Evidence Rule 106 is inapplicable. *See Lewis v. State,* 754 N.E.2d 603, 607 (Ind.Ct.App.2001) (holding that Ind. Evidence Rule 106 was inapplicable when the detective "*testified about* the conversation" and the State did not offer the videotape or transcript of this conversation into evidence), *trans. denied.*

This court has previously held that "the common law doctrine of completeness applies not only to writings but oral conversations as well" and "it will always be proper to cross-examine and to impeach an officer *testifying about* a conversation with a defendant." [5] *Id.* Here, Barnett testified about the conversation with Detective Lawrence on cross examination. The prosecutor asked Barnett if he told Detec-

---

5. This court also held that "[t]he continued viability of the doctrine as it relates to testimony about conversations—and not the writings or recordings—is supported by post-Rules of Evidence case law." *Lewis,* 754 N.E.2d at 607 (citing *Sweeney v. State,* 704 N.E.2d 86, 110 (Ind.1998), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999)).

tive Lawrence that he touched A.S.'s vagina, and Barnett said that he did not. On redirect, Barnett testified that he did not bring up the word "vagina" in the police interview and that the interview lasted over two and a half hours. Transcript at 135. Thus, Barnett's counsel examined Barnett regarding his statements to police.

Moreover, we cannot say that Barnett made an offer of proof in accordance with Ind. Evidence Rule 103. "An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony and the potential for prejudice if it is excluded." *Dowdell v. State,* 720 N.E.2d 1146, 1150 (Ind.1999). "It is well settled that an offer of proof is required to preserve an error in the exclusion of a witness' testimony." *Id.* Accordingly, Barnett has waived review of this issue on appeal. *See, e.g., id.* (holding that the defendant's failure to make an offer of proof waives any error); *cf. Norton v. State,* 772 N.E.2d 1028, 1035 (Ind.Ct.App. 2002) (observing that counsel requested that the entire statement be admitted under the doctrine of completeness and made an offer of proof of the entire statement), *trans. denied.*

For the foregoing reasons, we affirm Barnett's convictions for child molesting as class C felonies.

Affirmed.

CRONE, J., and MAY, J., concur.