**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 24 2013, 8:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRYAN LEE CIYOU**
**LORI B. SCHMELTZER**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS BARNETT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1207-PC-610 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-0809-PC-207709

**April 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Dennis Barnett appeals the post-conviction court's denial of his petition for post-conviction relief. Barnett raises two issues for our review, which we restate as the following single issue: whether Barnett was denied a fair trial due to alleged juror misconduct.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts underlying Barnett's convictions were stated by this court in his direct appeal:

> During the summer of 2008, seven-year-old A.S. played with her friend S., who lived nearby. S. lived with her mother, her grandmother, and her grandfather, Barnett, who was born on December 13, 1949. A.S. would play on the computer while sitting in Barnett's lap. While A.S. was playing on the computer with Barnett, he "just started touching [A.S.] in wrong places" or "[b]ad places that you're not supposed to touch" or "private spots." Transcript at 20-21. Barnett touched her "[a]lmost everyday" in her "private part" that she uses to go to "the bathroom." Id. at 21-22. Barnett always touched A.S. on the inside of her underwear and "would just like put his hand" in the front of her pants "and just left it there." Id. at 24. Sometime Barnett"s hand went on the inside of A.S.'s "private spot," which hurt A.S. Id. at 25. At one point, Barnett also put his hand on the backside of A.S.'s "private part" or the part that she uses to "go number . . . two." Id. at 29. A.S. told Barnett to stop, and Barnett said, "no, I'm a grown up. I can do what I want." Id. at 26-27.
>
> A.S. eventually told her grandmother, who called the police. Barnett gave a statement to Indianapolis Police Detective Chris Lawrence.

Barnett v. State, 916 N.E.2d 280, 282 (Ind. Ct. App. 2009), trans. denied ("Barnett I").

The State charged Barnett with two counts of child molesting, as Class C felonies. The jury found Barnett guilty as charged. The trial court entered judgment of conviction accordingly and, on March 20, 2009, it sentenced Barnett to three years with forty-four

days executed and the remainder suspended for the first count of child molesting and three years with the entire sentence suspended on the second count of child molesting, to be served consecutively. The trial court also placed Barnett on "sex offender probation for 6 years, zero tolerance." Id. at 284. On appeal, we affirmed Barnett's convictions. Id. at 287.

On March 3, 2011, Barnett filed a verified petition for post-conviction relief ("the petition"). In the petition, he alleged that his conviction was "procured by juror deceit" because

> Juror April Tillberry did not honestly answer Juror questionnaire, questions on voir dire, and on the trial court's questions in Mr. Barnett's case. Juror Tillberry had extensive knowledge of the case, personal relationship with the [victim's] family (victim and her parents), and was the girlfriend of the victim's father's best friend. Had Juror Tillberry disclosed this, she would have been challenged for cause and not allowed to sit on the jury.

Appellant's App. at 39. The petition also alleges that, after his appeal in Barnett I, Barnett learned that Juror Tillberry had "attended a 'conviction party' at the [victim's] home after [Barnett] was convicted on March 11, 2009." Id. As such, Barnett alleged that it was "inconceivable [that] Juror April Tillberry was not then [at the time of trial], and is not now, biased against Mr. Barnett and [that] lying to the Court did not prejudice his right to a fair weighing of the facts by the jury." Id. at 41. On those grounds, Barnett sought a new trial.

On November 29, 2011, the post-conviction court held a hearing on Barnett's petition, and on July 2, 2012, the court issued its order denying the same ("Order"). The Order included findings of fact and conclusions thereon, which provide in relevant part as follows:

3

FINDINGS OF FACTS

\* \* \*

6.      The Court held an evidentiary hearing on November 29, 2011. [Barnett] presented testimony from Brenda McGinley who is a private investigator that he hired; [Barnett] additionally presented testimony from April Tillberry, who was a juror in his original trial.  [Barnett] entered into evidence a deposition of April Tillberry, a transcript of a phone call between Brenda McGinley and April Tillberry, and the transcript of the voir dire conducted in this case.

7.      On its behalf, the State presented testimony from Preston Faulkner, who was in a relationship with April Tillberry at or near the time of the trial in this case.  At the State's request, the Court took judicial notice of its file in this matter.

8.      For the reasons discussed below, the Court finds that the facts are with the State and against [Barnett].

CONCLUSIONS OF LAW

\* \* \*

2.      Juror Misconduct

In support of his petition, [Barnett] contends that that [sic] he should receive a new trial because one of the jurors was a friend of the father of his victim, and that juror had prior knowledge of the allegations in this case. "In certain circumstances, '[t]he failure of a juror to disclose a relationship to one of the parties may entitle the prejudiced party to a new trial.'" Stephenson v. State, 864 N.E.2d 1022, 1055 (Ind. 2007) (citations omitted) (alteration in original), cert. denied, __ U.S. __[,] 128 S. Ct. 1871, 170 L. Ed. 2d 751.  "To obtain a new trial based on a claim of juror misconduct, the defendant must demonstrate that the misconduct was gross and likely harmed the defendant."  Id.  Further, the defendant must present specific and substantial evidence establishing that a juror was possibly biased, id., and that this bias ["]probably harmed the defendant."  Dickenson v. State, 732 N.E.2d 238 (Ind. App. 2000), trans. denied; Roberts v. State, 894 N.E.2d 1018, 1022 (Ind. App. 2008).  "The issue of juror misconduct is a matter within the trial court's discretion." Lopez v. State, 527 N.E.2d 1119, 1130 (Ind. 1988).

Here, [Barnett] claims that juror April Tillberry committed gross misconduct because he believes she had an undisclosed prior relationship with the victim's family and prior knowledge of the facts of the case. [Barnett] bases his claims on reports of a pretextual phone conversation that Brenda McGinley had with Ms. Tillberry, on an abortive deposition of Ms.

4

Tillberry, and based on a subjective interpretation of selected portions of Ms. Tillberry's and Mr. Faulkner's testimony at the evidentiary hearing.

Ms. Tillberry's demeanor towards the Court was appropriate but in regards to questions put to her during the evidentiary hearing she was at times circumspect. It is possible that her demeanor during the evidentiary hearing was indicative of the fact she was hiding something, but it is just as likely that her behavior was the natural reaction of a person whose integrity is under attack. Standing alone, the curious demeanor displayed at the evidentiary hearing is insufficient to support the logical leap that Ms. Tillberry committed juror misconduct or had advance knowledge of the case. Ms. Tillberry testified she did not know the victim or the victim's father, [J.S.], prior to the trial and there is no evidence before the Court to contradict this testimony; [Barnett's] investigator described an earlier phone conversation that might have cast doubt on this testimony but the Court has only the subjective memory of the private investigator because the first phone[ ]call was not recorded[. I]n the absence of a transcript of the earlier call, Ms. Tillberry's sworn testimony is the best evidence before the Court and is sufficient to rebut [Barnett's] claims.

The Court finds Ms. Tillberry's testimony that she was not aware of any personal connection with [the victim's father] until sometime after her participation as a juror, when she learned that her boyfriend had known the victim's father, is dispositive. There is no independently verifiable evidence to contradict this testimony.

The Court finds that Preston Faulkner's testimony is also credible. Mr. Faulkner acknowledged that he and April Tillberry have had a longstanding personal relationship. Mr. Faulkner testified that he knew [the victim's father] in school but has had only minimal contact with [the father] since high school. Mr. Faulkner testified that he and April Tillberry had not socialized with [the victim's father] prior to trial, and had not discussed the facts of the case prior to her service as a juror. Again, there is no independently verifiable evidence to contradict his claim.

The Court finds that Ms. Tillberry's statements about [the victim's father] in her pretextual conversation with Ms. McGinley are ambiguous and do not provide adequate evidentiary support for [Barnett's] claims. The Court is without the benefit of the first pretextual conversation between Ms. McGinley and Ms. Tillberry and will not accept [Barnett's] subjective, second-hand interpretation of the conversation. In the second phone call, recorded on January 27, 2011, Ms. Tillberry clearly indicated that she had not known [the victim's father] for very long, and had only met him once. These statements provide no evidence or support for the claim that as of the March 11,2 009[,] trial in this case, Ms. Tillberry had any relationship with the victim or her family.

App. at 74-78.

5

**DISCUSSION AND DECISION**

Barnett asserts that the post-conviction court erred when it denied his petition for relief. Our standard of review from the post-conviction court's denial of a petition for post-conviction relief is well settled:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment, Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004), and we will not reverse the judgment unless the evidence unerringly and unmistakably leads to the opposite conclusion, Patton v. State, 810 N.E.2d 690, 697 (Ind. 2004). We also note that the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). We will reverse a post-conviction court's findings and judgment only upon a showing of clear error, which is that which leaves us with a definite and firm conviction that a mistake has been made. Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006). Such deference is not given to conclusions of law, which we review de novo. Chism v. State, 807 N.E.2d 798, 801 (Ind. Ct. App. 2004).

Taylor v. State, 882 N.E.2d 777, 780-81 (Ind. Ct. App. 2008).

> Further:

> Postconviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. Rouster v. State, 705 N.E.2d 999, 1003 (Ind. 1999). Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the postconviction rules. P C.R. 1(1); Rouster, 705 N.E.2d at 1003. If an issue was known and available, but not raised on direct appeal, it is waived. Rouster, 705 N.E.2d at 1003. If it was raised on appeal, but decided adversely, it is res judicata. Id. (citing Lowery v. State, 640 N.E.2d 1031, 1037 (Ind. 1994)). If not raised on direct appeal, a claim of ineffective assistance of trial counsel is properly presented in a postconviction proceeding. Woods v. State, 701 N.E.2d 1208, 1215 (Ind. 1998). A claim of ineffective assistance of appellate counsel is also an appropriate issue for postconviction review. As a general rule, however, most free-standing claims of error are not available in a postconviction proceeding because of the doctrines of waiver and res judicata.

Timberlake v. State, 753 N.E.2d 591, 597-98 (Ind. 2001).

Barnett contends that he was denied his Sixth Amendment right to a fair trial because of alleged juror misconduct. Any person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims . . . that the conviction or the sentence was in violation of the Constitution of the United States or the constitution or laws of this state" may petition for post-conviction relief. Ind. Post-Conviction Rule 1(1)(a)(1). Barnett first learned of the alleged juror bias after his direct appeal, when he heard that Tillberry had attended a post-conviction party at the victim's house and had previously been acquainted with the victim's father. And a claim of juror misconduct may be proper grounds for post-conviction proceedings. Wilkes v. State, No. 10S00-1004-PD-185, at *5 (Ind. April 4, 2013). Thus, Barnett's claim is properly before us in post-conviction proceedings because it was not known or knowable at the time of his direct appeal. See Pitman v. State, 635 N.E.2d 1098, 1100 (Ind. Ct. App. 1994). See also Stephenson, 864 N.E.2d at 1054-55 (alleging bias of juror due to acquaintance with victim's sister, discovered after direct appeal, as basis for post-conviction relief).

Our supreme court described juror misconduct in Stephenson as follows:

The right to a jury trial includes "a fair trial by a panel of impartial, indifferent jurors." Turner v. Louisiana, 379 U.S. 466, 471, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965). In certain circumstances, "[t]he failure of a juror to disclose a relationship to one of the parties may entitle the prejudiced party to a new trial." Godby v. State, 736 N.E.2d 252, 256 (Ind. 2000) (citing Haak v. State, 275 Ind. 415, 417, 417 N.E.2d 321, 326 (1981). To obtain a new trial based on a claim of juror misconduct the defendant must demonstrate that the misconduct was gross and likely harmed the defendant. Id. Furthermore, the defendant must present "specific, substantial evidence" establishing that a juror was possibly biased. Guyton v. State, 771 N.E.2d 1141, 1145 (Ind. 2002) (quoting Lopez v. State, 527 N.E2d 1119, 1130 (Ind. 1988)).

7

864 N.E.2d at 1054-55 (some citations omitted).

Here, Barnett contends that he was denied an impartial jury at his trial on child molesting charges because Tillberry was acquainted with the victim's father and did not disclose that fact to the trial court when jurors were asked during voir dire whether they knew or were familiar with the victim or her father. But, as the post-conviction court found, Tillberry denied ever having met the victim's father and testified that she had remembered he was acquainted with her then boyfriend, Faulkner, only after the trial had concluded. Barnett points to Tillberry's incomplete deposition testimony and a private investigator's pretextual telephone conversations with Tillberry to show that Tillberry had known the victim's father even before the trial.

But because the first telephone call from the investigator to Tillberry was not recorded, the only evidence supporting Barnett's claim with regard to that call was the subjective memory of the investigator. Thus, the court found that, in the absence of a transcript of the first telephone call, Tillberry's testimony was the best evidence of that call and was "sufficient to rebut [Barnett's] claims." Appellant's App. at 77. And although Tillberry said in the second call that she had spoken to the victim's father, that conversation with him took place well after the trial, in response to the investigator's first telephone call. The transcript of that call does not show when Tillberry first met or knew of the victim's father and is ambiguous at best regarding Tillberry's acquaintance with the victim's father. Based on our review of the record on appeal, we cannot say that the post-conviction court clearly erred in reaching that conclusion.

8

Barnett has not shown that the post-conviction court clearly erred when it found no juror misconduct by Tillberry. As such, he cannot show prejudice. Because Barnett has not demonstrated juror misconduct, he has not shown that the post-conviction court should have granted his petition for post-conviction relief.

We affirm.

BAILEY, J., and BARNES, J., concur.