**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 20 2014, 8:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT BEELER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1310-CR-845 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1305-FA-32399

**May 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Robert Beeler was convicted after a jury trial of attempted murder,[1] a Class A felony and was sentenced to forty-five years executed. He appeals, raising the following restated issues for our review:

I.    Whether the trial court abused its discretion when it denied Beeler's motion for mistrial after removing a juror; and

II.   Whether the trial court abused its discretion when it refused Beeler's tendered jury instruction.

We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

In the evening on May 14, 2013, Andrew Carson, Terron Gary, and Darnell Frierson were walking on Drexler Avenue in Indianapolis, Indiana. The three walked in front of a house where a person they knew as "Peanut" lived. (A/V Rec.; 08/12/13 at 2:00:26). All three men were walking in the middle of the street. Frierson was on the side of the street farthest from Peanut's house, Gary was in the middle of the group, and Carson was on the side closest to Peanut's house.

As the men approached Peanut's house, they recognized people inside of the house. They also observed Beeler watching them from around the back corner of the house. The three men had experienced previous problems with Beeler and had faced "retaliation from

---

[1] *See* Ind. Code §§ 35-41-5-1, 35-42-1-1.

[2] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order Establishing the Indiana Court Reporting Pilot Project for Exploring the Use of an Audio/Visual Record on Appeal[,]" issued on September 18, 2012, and effective on July 1, 2012. *See In Re Pilot Project For Audio/Visual Recordings In Lieu of Paper Transcripts In the Preparation of the Record and Briefing on Appeal*, 976 N.E.2d 1218 (Ind. 2012). We are grateful for the ongoing cooperation of the Honorable Mark D. Stoner of Marion Superior Court, the Marion County Public Defender Agency, and the Office of the Indiana Attorney General in the execution of this pilot project.

2

him in the past." (A/V Rec.; 08/12/13 at 1:54:11). Beeler stepped out from behind the house, raised his arm while holding a gun, and said, "Y'all bitch ass niggas want to play?" (A/V/ Rec.; 08/12/13 at 2:04:23, 2:35:13). Beeler then began firing the gun at the men. Carson saw Beeler fire the first shot, and then the three men ran away. Carson believed that Beeler fired at least eight shots. Gary and another witness thought that Beeler fired fifteen shots. Beeler pursued the men while shooting. Beeler fired the gun while he was fifteen to twenty feet from the men. After fleeing from Beeler, Carson and Gary realized that Frierson was not with them and went to Frierson's house. They later found out that Frierson had been shot once in the head and once in the arm and had been taken to the hospital.

On May 20, 2013, the State charged Beeler with Count I attempted murder, a Class A felony, and Count II unlawful possession of a firearm by a serious violent felon, a Class B felony. The State also alleged a sentencing enhancement for the use of a firearm. On July 16, 2013, the State filed an information alleging that Beeler was an habitual offender. Beeler's jury trial began on August 12, 2013. The trial court partially bifurcated the trial for Count II.

On August 13, 2013, the second day of trial, the trial court assembled the parties and informed them outside the presence of the jury that a juror had notified the court that the juror's sister had friends who associated with the victim, Frierson, and that a friend of the juror's sister had been in the courtroom. The trial court interviewed the juror in the presence of the parties and again out of the presence of the other jurors. The juror told the court that she recognized Frierson and Gary, but did not know them personally, and that

3

she had grown up in the neighborhood where the crime occurred. (A/V Rec.; 08/13/13 at 09:26:19, 09:28:45). She had informed the other jurors that she had previously lived in the neighborhood and that some of the faces of the witnesses who testified looked familiar. (A/V Rec.; 08/13/13 at 09:29:50-:58). She asked the other jurors if it was a problem, and they opined it would not be if she did not know Frierson personally. (A/V Rec.; 08/13/13 at 09:30:00-:04). The juror testified that she did not express any judgment to the other jurors about Frierson and did not give them any details about the neighborhood. (A/V Rec.; 08/13/13 at 09:31:52, 09:32:10-14). The juror stated that she "felt uncomfortable" and thought it would be best not to be in the situation of being on the jury. (A/V Rec.; 08/13/13 at 09:28:16, 09:28:41).

Both the State and the defense asked that the juror be removed, which the trial court granted. The defense requested a mistrial, but in response to the trial court's questioning, could not cite to anything the juror had reported that would have given a negative impression to the other jury members. (A/V Rec.; 08/13/13 at 09:37:25). The trial court concluded that the juror had not reported that she had said anything to the other jurors that conveyed prejudicial information or that she herself could not be impartial. (A/V Rec.; 08/13/13 at 09:38:38). The trial court removed the juror and denied Beeler's motion for mistrial. The trial court replaced the excused juror with the alternate and informed the jury that it had excused the juror. The trial court admonished the jury that it should not speculate as to why the juror had been excused or in any way allow the removal to influence its decision. (A/V Rec.; 08/13/13 at 09:46:42-:50).

4

Beeler submitted his proposed final jury instructions 1-3. For proposed final jury instruction 2, Beeler withdrew the part that included aggravated battery as a lesser-included offense of attempted murder, but maintained that the jury should be instructed as to the remaining part that included criminal recklessness as a lesser-included offense. (A/V Rec.; 08/13/13 at 12:01:05). The trial court denied this instruction, reasoning that the State had charged Beeler as having acted with the intent to commit murder and no serious evidentiary dispute regarding Beeler's intent existed. (A/V Rec.; 08/13/13 at 12:02:58-:03:32).

At the conclusion of the trial, the jury found Beeler guilty as charged. The State dismissed Count II, Class B felony unlawful possession of a firearm by a serious violent felon. Beeler waived jury trial for his habitual offender enhancement. The trial court conducted a trial on the enhancement and found Beeler was not an habitual offender. The trial court sentenced Beeler to forty-five years executed for his attempted murder conviction. Beeler now appeals.

## DISCUSSION AND DECISION

### I. Motion for Mistrial

Beeler contends that the trial court abused its discretion when it denied his motion for a mistrial after a juror was excused. The decision to grant or deny a motion for mistrial lies within the discretion of the trial court. *Barnett v. State*, 916 N.E.2d 280, 284 (Ind. Ct. App. 2009) (citing *Francis v. State,* 758 N.E.2d 528, 532 (Ind. 2001)), *trans. denied.* The grant of a motion for mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *Id.* "'On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because

5

the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury.'" *Id*. (citing *McManus v. State,* 814 N.E.2d 253, 260 (Ind. 2004), *cert. denied,* 546 U.S. 831 (2005)). To succeed on appeal from the denial of a mistrial, a defendant must demonstrate that the conduct complained of was both error and had a probable persuasive effect on the jury's decision. *Id*. (citing *Booher v. State,* 773 N.E.2d 814, 820 (Ind. 2002)).

Although Beeler frames this issue as whether the trial court abused its discretion when it denied his motion for mistrial, his argument is directed at the trial court's failure to inquire as to the effect on the other jurors that the removal of the juror or her disclosure would have on the jury. He asserts that the trial court erred because it did not interrogate the jury regarding the risk of exposure to a substantial threat of prejudice due to the excused juror's statements to the jury. He alleges that the statements made by the juror to the other members of the jury may have tainted the jury, but we are left to speculate as to whether the jury was exposed to possible prejudicial information because they were not questioned.

"When an event which may improperly influence the jury occurs, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the event and the likelihood of its having come to the attention of any juror." *Barnett*, 916 N.E.2d at 284 (citing *Lindsey v. State,* 260 Ind. 351, 358, 295 N.E.2d 819, 824 (1973)). "However, the trial court is obligated to take the remedial action of interrogating the jury only if the court determines, in its discretion, that 'the risk of prejudice appears substantial, as opposed to imaginary or remote only.'" *Agnew v. State*, 677 N.E.2d 582, 584 (Ind. Ct. App. 1997) (quoting *Lindsey*, 260 Ind. at 358, 295 N.E.2d

6

at 824), *trans. denied.* Therefore, if the court determines that exposure to claimed prejudicial information does not raise a substantial risk of prejudice, it has no responsibility to interrogate the jurors or to take further remedial action. *Barnett*, 916 N.E.2d at 284.

In the present case, before Beeler's counsel requested a mistrial, the trial court and the parties spoke with the juror, and she told the trial court that she recognized Frierson and Gary, but did not personally know them, and that she had previously lived in the neighborhood where the crime occurred. (A/V Rec.; 08/13/13 at 09:26:19, 09:28:45). She testified that she had informed the other jurors that she had grown up in the neighborhood and that some of the faces of the witness who testified looked familiar, but she stated that she did not express any judgment to the other jurors about the witnesses and did not give them any details about the neighborhood. (A/V Rec.; 08/13/13 at 09:29:50-:58, 09:31:52, 09:32:10-14). The juror stated that she "felt uncomfortable" and thought it would be best not to be in the situation of being on the jury. (A/V Rec.; 08/13/13 at 09:28:16, 09:28:41). After the trial court removed the juror, Beeler's counsel requested a mistrial. The trial court denied the motion, concluding that the juror had not testified that she had said anything to the other jurors that conveyed prejudicial information or that she herself could not be impartial. (A/V Rec.; 08/13/13 at 09:38:38).

Because the juror had stated that she had not expressed any judgment to the other members of the jury or given any details about her knowledge of the neighborhood and witnesses, and the trial court determined that there was no risk of prejudice, the court had no responsibility to interrogate the jurors or to take any other remedial action. *See Barnett*, 916 N.E.2d at 285; *Agnew*, 677 N.E.2d at 584. However, the trial court did give the jury

an admonishment that it should not speculate as to why the juror had been excused or in any way allow the removal to influence its decision. (A/V Rec.; 08/13/13 at 09:46:42-:50). Beeler has not demonstrated that the conduct complained of was error or had a probable persuasive effect on the jury's decision. Under the circumstances and in light of the fact that a trial court was in the best position to gauge the surrounding circumstances of an event and its impact on the jury, we cannot say that the trial court abused its discretion by denying Barnett's motion for a mistrial. *See Barnett*, 677 N.E.2d at 285.

Beeler relies on *Threats v. State*, 582 N.E.2d 396 (Ind. Ct. App. 1991), *trans. denied*, for his contention. In *Threats,* during jury selection, it was discovered that a member of the venire had known the defendant years before. *Id*. at 398. Nevertheless, the juror was not struck from the jury and eventually became its foreman. *Id.* Then, two hours into the jury's deliberation, the juror revealed to the other jurors that he knew the defendant's wife. *Id.* One of them called this to the attention of the bailiff, who informed the judge. *Id.* The trial court replaced the juror with an alternate juror. *Id.* The defendant moved for a mistrial, which the trial court denied. *Id.* On appeal, the defendant argued that the trial court erred by not admonishing the jury regarding the juror's removal. *Id.* A panel of this court held:

> A vital part of the system is the trial judge's expression to the jurors of the gravity of their duty, pursuant to which jurors invest their time and integrity in performing their task. It would be therefore no great leap of imagination to suppose that one juror might resent another who had behaved inappropriately. Specifically, a juror in Threats'[s] trial could have resented [the juror's] conduct. It follows, that it would be unsurprising to learn that [the juror's] silence and eventual removal generated prejudice for or against Threats, as equally as it would be no surprise to learn that the jurors remained impartial. We cannot say the threat of contamination was "substantial"; on the other hand, we cannot say it was "imaginary or remote." We do see, however, a "clear potential" for a tainted verdict. The deciding point is that

8

> [the juror's] conduct reasonably might have engendered prejudice among the jurors, yet the trial judge took no action to ascertain that, despite his perception that what had transpired "seem[ed] to be a stumbling block in the jury room" and "[jurors] reported to the bailiff that they felt [the juror] had an interest in the case."

*Id.* at 401 (internal citations omitted). This court concluded that in the absence of remedial action by the trial court, "we cannot be certain that the verdict was free of improper influences." *Id.* We find *Threats* distinguishable from the present case. Here, unlike in *Threats,* there was no indication that the juror knew Beeler, Frierson, or any of the witnesses personally or that the juror's conduct might have engendered prejudice among the jurors. Her statements to the trial court were insufficient to show the potential for prejudice presented in *Threats.* Further, here, the trial court gave an admonishment to the jury that it should not speculate as to why the juror had been excused or in any way allow the removal to influence its decision. We, therefore, conclude that the trial court was not required to interrogate the jury as to the effect on the other jurors that the removal of the juror or her disclosure would have on the jury, and the trial court did not abuse its discretion in denying Beeler's motion for mistrial.

## II. Jury Instruction

Beeler argues that the trial court abused its discretion when it refused to give his tendered final jury instruction on the lesser-included offense of criminal recklessness. Instruction of the jury is left to the sound discretion of the trial court. *Ledesma v. State,* 761 N.E.2d 896, 898 (Ind. Ct. App. 2002). Our review of a trial court's decision is highly deferential, and we will not disturb the court's ruling absent an abuse of discretion. *Id.*

9

When a defendant requests a lesser-included offense instruction, the trial court must apply a three-part analysis set out in *Wright v. State,* 658 N.E.2d 563 (Ind. 1995). First, the trial court must determine if the alleged lesser-included offense is inherently included in the charged offense. *Wright,* 658 N.E.2d at 566. If the court determines that the offense is not inherently included, the trial court proceeds to step two and decides whether the alleged lesser-included offense is factually included in the crime charged. *Id.* at 567. However, if the alleged lesser-included offense is neither inherently nor factually included in the crime charged, a requested instruction on the alleged lesser-included offense should not be given and the trial court need not proceed to step three. *Id.* If a trial court has determined that an alleged lesser-included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties. *Id.* If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense, and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. *Id.* (citing *Aschliman v. State*, 589 N.E.2d 1160, 1162 (Ind. 1992); *Lynch v. State*, 571 N.E.2d 537, 539 (Ind. 1991)). If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction. *Id.*

First, it is well-established in Indiana that criminal recklessness is not an inherently included offense of attempted murder. *White v. State*, 849 N.E.2d 735, 739 (Ind. Ct. App. 2006) (citing *Ellis v. State*, 736 N.E.2d 731, 734 (Ind. 2000)), *trans. denied*. However,

10

whether an offense is a factually lesser-included offense of another offense requires a case-by-case determination. The trial court must compare the statute defining the alleged lesser-included offense with the charging instrument in the case. *Id.* (citing *Wright,* 658 N.E.2d at 567). If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser-included offense, then the alleged lesser-included offense is factually included in the crime charged. *Id.*

Here, the charging information for attempted murder against Beeler stated in relevant part:

> Robert Beeler, on or about May 14, 2013, did attempt to commit the crime of Murder, which is to *intentionally* kill another human being, namely: Darnell Frierson, by engaging in conduct, that is: shooting a deadly weapon that is: a gun, at or against the person of Darnell Frierson, with the *specific intent* to kill Darnell Frierson, which conduct constituted a substantial step toward commission of said crime of Murder.

*Appellant's App.* at 21 (emphasis added). The State charged Beeler with intentional conduct and not any act of reckless conduct, and the charging information included no element of reckless behavior. We therefore conclude that criminal recklessness was not factually included in the attempted murder charge in the present case. Because criminal recklessness was neither an inherently nor a factually included offense of attempted murder, the trial court properly denied Beeler's tendered lesser-included criminal recklessness instruction.

Additionally, even if Beeler were able to show that criminal recklessness was a factually included offense, no serious evidentiary dispute existed. Carson, Gary, and Frierson, the victim, had previous problems with Beeler. The three men were merely

walking in the middle of the street when Beeler stepped out, raised his arm holding the gun, and said, "Y'all bitch ass niggas want to play?" (A/V/ Rec.; 08/12/13 at 2:04:23, 2:35:13). Beeler then began firing the gun at the men. Beeler not only shot the gun at the men, but he pursued them as they ran away. Beeler fired at least four shots, but most witnesses stated that he fired at least twice that number. Beeler was less than twenty feet away from the men when he began shooting at them. He struck Frierson in the head and in the arm. The close proximity to the victim, large number of shots fired, past problems with the victim, shooting the victim in the head, and the expletive-laced statement yelled at the men before the shooting all established that Beeler acted with the specific intent to kill Frierson when he fired his gun. Therefore, no serious evidentiary dispute existed. The trial court did not abuse its discretion when it denied Beeler's tendered lesser-included offense instruction.

Affirmed.

MAY, J., and BRADFORD, J., concur.